# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-20628

United States Court of Appeals
Fifth Circuit

**FILED**

April 23, 2018

Lyle W. Cayce
Clerk

KAREN D'ONOFRIO,

        Plaintiff - Appellant

v.

VACATION PUBLICATIONS, INCORPORATED, doing business as
Vacations To Go,

        Defendant-Third Party Plaintiff - Appellee

v.

MICHAEL D'ONOFRIO, doing business as Tranquility Base Enterprises,

        Third Party Defendant - Appellant

*******************************************************************

KAREN D'ONOFRIO,

        Plaintiff - Appellant

v.

VACATION PUBLICATIONS, INCORPORATED, doing business as
Vacations To Go,

        Defendant - Appellee

No. 16-20628

Appeals from the United States District Court
for the Southern District of Texas

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

In this employment dispute, Karen D'Onofrio sued her former employer, Vacations to Go ("VTG" or "Vacation"), a division of Vacation Publications, Inc., the largest seller of ocean-going cruises in the world, for interfering with her rights under the Family Medical Leave Act. Vacation counter sued, alleging that Karen and her husband, Michael D'Onofrio, breached Karen's covenant not to compete, converted confidential information, and tortuously interfered with its business relationships, among other things, by conspiring to establish a competing vacation-sales franchise. A year after Vacation moved for summary judgment, the district court granted that motion—terminating all pending motions and entering final judgment on all claims, including those not addressed in its order. Finding numerous disputes of material fact, we reverse in part, affirm in part, vacate the district court's award of attorneys' fees, damages, and injunctive relief, and remand for further proceedings.

## I.

### A.

Karen D'Onofrio began working as a sales representative for Vacation in 2012. Vacation provided Karen with specialized training in sales and marketing and with industry knowledge and confidential information including client information and marketing and sales techniques. The employment contract she signed with Vacation stated that during the course of her employment and for 18 months thereafter she would not, among other things: (1) "[w]ork in any capacity . . . for any direct or indirect competitor of

No. 16-20628

VTG in any job related to sales or marketing of cruises, escorted or independent tours, river cruises, safaris, or resort stays"; (2) "[d]isclose directly or indirectly VTG's . . . Confidential Information to any person . . . for any purpose or reason whatsoever"; (3) [d]irectly or indirectly use VTG's . . . Confidential Information for [her] own benefit for any purpose whatsoever"; (4) "[s]olicit, engage in selling to, engage in business with, or call upon any person or entity who or which has purchased a cruise, escorted or independent tour, river cruise, safari or resort stay from VTG within the preceding 3 years"; or (5) "[s]olicit or induce any person that has been a customer of VTG within the preceding 3 years to terminate its relationship with VTG."

Michael is an aerospace engineer, but has supplemented his income throughout his career with various direct-sales ventures, including cookware, kitchen gadgets, and mattresses. In 2011, he was involved in a major car accident in which he sustained severe and lasting injuries requiring multiple surgeries. Due to the injuries he sustained, he found it impossible to continue his direct-sales business as he could no longer carry the products he sold to customers or trade shows. In April 2014, prior to undergoing major back surgery, Michael decided to pursue a "long-held desire" to sell travel services, which he could do without carrying heavy merchandise. He decided to purchase a franchise of CruiseOne, a company that also sells cruises and other travel-related products and services. In support of his application to purchase the franchise, Michael attached a screenshot of Karen's sales records at Vacation, including her sales totals but not customer information. In May 2014, the D'Onofrios executed a franchise agreement between CruiseOne and Tranquility Base Enterprises, an entity jointly owned by Michael and Karen.

On July 7, 2014, Karen received a confirmation e-mail stating that she was scheduled to attend a CruiseOne training in Florida beginning on July 10. On July 9, at the suggestion of Vacation's human resources ("HR") specialist,

No. 16-20628

Karen requested leave from Vacation pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2612(a)(1)(C), in order to care for Michael. Vacation offered Karen two options: she could go on unpaid FMLA leave or she could log in remotely a few times per week and continue to service her existing accounts so that she could keep the commissions from those accounts while on leave. Karen chose the latter option, and agreed to continue servicing existing clients but not take new leads. On July 10, she attended the CruiseOne training in Florida while Michael stayed home.

On July 14, 2014, Vacation's senior director of HR e-mailed Karen confirming that her FMLA leave had begun on July 11 and asking that she update her e-mail away message to reflect that she was on leave but would be responding to clients periodically. On July 17, Karen's manager checked Karen's Vacation e-mail account to ensure that she had updated her away message, and noticed that Karen had not responded to any e-mails since July 12. Her manager had also received several complaints from Karen's clients that she had not responded to their voicemails. The HR director then sent Karen an e-mail reiterating Karen's responsibilities if she wanted to continue servicing clients and receiving commissions while on leave. Karen responded on July 21, stating that her laptop had not been working. On August 11, after not being able to reach Karen for over a week, her manager accessed Karen's Vacation e-mail account and found 220 unread e-mails. Karen had not read a single e-mail since July 26.

In light of Karen's failure to respond to client e-mails and voicemails, the HR director decided to bring Karen's clients in house while she was on leave. He e-mailed her to inform her of the change, explaining that the clients would be returned to her upon her return from FMLA leave. Karen was also locked out of her Vacation accounts. The senior director of operations then e-mailed Vacation's in-house salespersons, informing them that they would be covering

No. 16-20628

Karen's clients while she was on leave and asking that they inform Karen's clients of the arrangement. One manager mistakenly informed 23 clients via e-mail that Karen was no longer working at Vacation. One such e-mail went to Michael, as he had previously booked a cruise through his wife.

After being locked out of her Vacation accounts and learning of the e-mail that Michael received, Karen believed that she had been terminated from Vacation. She filed for unemployment benefits on August 24, 2014. In response, Vacation indicated that Karen was still employed and on FMLA leave. In October 2014, Vacation e-mailed Karen confirming that her FMLA leave had expired and asking whether she planned to return. Karen responded that she was not returning because she believed that she had been terminated in August.

Karen also alleges that she was sexually harassed during her employment with Vacation. She alleges that one Vacation employee, an IT technician, touched her breasts and, after she reported the conduct, continued to hover around her work area, stare at her, and make unwanted physical contact with her. After reporting the continued harassment, she was reassigned to another department on a different floor, but other employees, including supervisors, allegedly made inappropriate comments and jokes, used obscene language, and engaged in unwanted physical contact.

**B.**

Because it is relevant to several of the issues raised on appeal, we recount in some detail the tangled procedural history of this case. In February 2015, Karen filed suit against Vacation in state court alleging FMLA violations. Vacation filed counterclaims against Karen for breach of contract, conversion of confidential information, fraud, tortious interference with existing and prospective business relations, and breach of fiduciary duty. Vacation subsequently removed the case to federal court. It then sought and

received leave to join Michael as a third-party defendant, asserting claims against him for conversion, civil conspiracy, tortious interference, and aiding and abetting breach of fiduciary duties.

In June 2015, Karen moved to voluntarily dismiss her FMLA claims, which Vacation opposed and the district court denied. In July, Michael moved to dismiss the complaint against him for lack of subject-matter jurisdiction. Then in August, Vacation moved for summary judgment on Karen's FMLA claims against it and its claims against both her and Michael. The next month, Karen, proceeding *pro se*, filed a separate federal lawsuit asserting claims for sexual harassment by two Vacation employees in violation of Title VII, which was consolidated with this case in December 2015.

On August 22, 2016, the district court granted Vacation's motion for summary judgment.[1] The court terminated all pending motions, including Michael's motion to dismiss for lack of subject-matter jurisdiction (which was not addressed in the court's order) and issued a final judgment disposing of all claims, including the sexual harassment claims added in December 2015 (which were not addressed in either Vacation's motion for summary judgment or the court's order). The D'Onofrios timely appealed.

## II.

### A.

Michael first contends that the district court lacked subject-matter jurisdiction over the claims against him because they were state-law claims that did not arise out of the same nucleus of operative fact as Karen's federal

---

[1] The district court's order, which appears to be unchanged from the proposed order submitted by Vacation with its motion for summary judgment, erroneously states that it was issued in 2015. The district court's docket, however, makes clear that the order was issued in 2016.

FMLA claims against Vacation.[2]  We "review[] a district court's assumption of subject-matter jurisdiction *de novo*."  *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 218-19 (5th Cir. 2012).  Once subject-matter jurisdiction is established, we review the decision to exercise supplemental jurisdiction for abuse of discretion.  *See Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).[3]

Federal district courts have "supplemental jurisdiction over all . . . claims that are so related to claims in the action within [the district court's] original jurisdiction that they form part of the same case or controversy under Article III," including "claims that involve the joinder or intervention of additional parties."  28 U.S.C. § 1367(a); *see also State Nat. Ins. Co. v. Yates*, 391 F.3d 577, 579 (5th Cir. 2004).[4]  "The question under section 1367(a) is whether the supplemental claims are so related to the original claims that they . . . 'derive from a common nucleus of operative fact.'"  *Mendoza*, 532 F.3d at 346 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

Here, there is a "common nucleus of operative fact" between Karen's FMLA claims and Vacation's state-law claims against Michael.  Karen alleged

---

[2] Michael also briefly suggests that he was improperly made a party under Rule 14 of the Federal Rules of Civil Procedure.  However, Vacation explicitly, and correctly, cited Rules 19 and 20 as the basis for joinder.

[3] The district court never actually ruled on the motion to dismiss for lack of subject-matter jurisdiction.  Rather, the motion remained pending for over a year and was simply terminated after the district court granted Vacation's motion for summary judgment—including on the claims Michael sought to have dismissed for lack of jurisdiction.  That was error.  A court may not assume its jurisdiction for purposes of deciding a case on the merits.  *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" (alternation in original) (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884))).  In light of the fact that the district court never actually ruled on the motion to dismiss, it is unclear that a deferential standard of review should apply.  Nonetheless, we are satisfied that, even on de novo review, the exercise of supplemental jurisdiction was proper here.

[4] There are several exceptions contained in § 1367(b) for claims against joined parties that are not relevant here.  *See* 28 U.S.C. § 1367(b).

that Vacation interfered with her rights under the FMLA. In defense, Vacation argued that Karen was not eligible for FMLA leave because she misrepresented her reasons for taking leave and improperly used her leave to help Michael establish a CruiseOne franchise, including by attending a CruiseOne training. In its claims against Michael, Vacation alleges that he conspired with Karen in committing fraud, breaching her covenant not to compete, and breaching her fiduciary duty to Vacation. Thus, the question whether Karen was entitled to FMLA leave—or, more to the point, whether she misused her leave in order to start a competing enterprise with Michael— derives from the same nucleus of operative facts as Vacation's claims against Michael. Accordingly, the district court had subject-matter jurisdiction over Vacation's state-law claims against Michael. *See State Nat. Ins. Co.*, 391 F.3d at 579, 581 (holding that district court had supplemental jurisdiction over defendant's state-law counterclaims against additional party).

Section 1367(c) provides that district courts may decline to exercise supplemental jurisdiction over a claim if: (1) "the claim raises a novel or complex issue of State law"; (2) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction"; (3) "the district court has dismissed all claims over which it has original jurisdiction"; or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Here, consideration of those factors, and of judicial economy, convenience, fairness, and comity, lead us to conclude that the exercise of supplemental jurisdiction was proper in this case. *See Mendoza*, 532 F.3d at 346 (stating that our review of the exercise of supplemental jurisdiction is guided by the § 1367(c) factors and "considerations of judicial economy, convenience, fairness, and comity").

Of the § 1367(c) factors, only the second even conceivably weighs in favor of declining supplemental jurisdiction. Vacation's claims arguably

No. 16-20628

predominate "in terms of proof, . . . the scope of the issues raised, [and] the comprehensiveness of the remedy sought," *Jackson v. Stinchcomb*, 635 F.2d 462, 473 (5th Cir. 1981) (quoting *Gibbs*, 383 U.S. at 726), though, as discussed above, the claims are intertwined. Regardless, the remaining three factors weigh clearly in favor of retaining jurisdiction. The state-law issues raised, while numerous, are neither novel nor complex; the district court had not dismissed the FMLA claims; and no other exceptional circumstances compelled declining jurisdiction.

Consideration of the common-law factors of judicial economy, convenience, fairness, and comity further convince us that the district court did not abuse its discretion by exercising supplemental jurisdiction. By the time that Michael filed his motion to dismiss for lack of subject-matter jurisdiction, the parties had exchanged substantial discovery.[5] In fact, Vacation's motion for summary judgment was filed just one month later. Finally, there does not appear to be, nor does Michael identify, any unfairness resulting from the exercise of supplemental jurisdiction.

## B.

Before turning to the D'Onofrios' various challenges to the district court's grant of summary judgment, we first address their evidentiary challenges. *See Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1109 (5th Cir. 1991) (en banc) (stating that, in an appeal from summary judgment raising evidentiary issues, we first "review the trial court's evidentiary rules, which define the summary judgment record"), *abrogated on other grounds by Daubert v. Merrell*

---

[5] It does not appear that Michael was ever able to obtain discovery from Vacation. In April 2015, the district court issued an order quashing standard discovery and permitting discovery only as ordered by the court. In July 2015, Michael filed a motion for discovery. The district court never ruled on that motion, but simply terminated it after granting Vacation's motion for summary judgment. Nonetheless, Karen and Vacation had exchanged discovery addressing the same nucleus of facts.

*Dow Pharm., Inc.*, 509 U.S. 579 (1993). Rulings on motions for discovery are reviewed for abuse of discretion. *Atkinson v. Denton Publ'g Co.*, 84 F.3d 144, 147 (5th Cir. 1996).

**1.**

First, Karen contends that the district court erred by not sustaining her objections to various statements in the depositions of three Vacation employees. She argues that the following were either inadmissible conclusions or made without personal knowledge: statements in the affidavit of Thain Allen that Karen had violated the covenant not to compete, that the covenant was enforceable, and that Karen had made material misrepresentations to Vacation; statements in the affidavit of Emerson Hankamer that the covenant not to compete was reasonable; and statements in the affidavit of Robert Baker calculating damages based on his knowledge of "how commissions work in the industry" generally rather than how they work at CruiseOne specifically.

Rule 56(c)(4) of the Federal Rules of Civil Procedure provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). At the summary judgment stage, evidence relied upon need not be presented in admissible form, but it must be "*capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)). Neither legal conclusions nor statements made without personal knowledge are capable of being so presented. *See* Fed. R. Evid. 602, 701, 702.

The objected-to statements of Allen and Hankamer are legal conclusions and thus are not competent summary judgment evidence. *See Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th

No. 16-20628

Cir. 2012) (stating that conclusions of law cannot be utilized in a motion for summary judgment).  The objected-to calculation of damages in the Baker affidavit is speculative and not adequately based on personal knowledge. *See* Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 602.  He bases his estimate of the D'Onofrios' commissions on his knowledge of "how commissions work in the industry," not how they work at CruiseOne in particular;[6] calculates Vacation's damages to include all of the D'Onofrios' revenues while identifying only one former Vacation customer who subsequently did business with the D'Onofrios;[7] and fails to adequately explain the reasoning behind his calculations.[8]  The objected-to statements should not have been relied upon to support summary judgment.[9]  *See Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (holding that conclusory assertions in affidavit could not be relied upon in summary judgment proceedings).

**2.**

Second, Michael contends that the district court erred by denying his motion for discovery.  Shortly after he was joined as a party, Michael moved for permission to issue seven requests for production and nineteen

---

[6] There is, in fact, evidence in the record refuting the notion that there is a uniform commissions rate in the industry.  The Hankamer affidavit explains that the commissions paid in the industry vary depending on the different overhead expenses incurred by different companies.

[7] Furthermore, while the Baker affidavit calculates Vacation's lost-profit damages based on the D'Onofrio's gross revenues, Texas law requires that lost-profits damages be "based on net profits, not gross revenue or gross profits."  *Kellmann v. Workstation Integrations, Inc.*, 332 S.W.3d 679, 684 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

[8] Baker asserts in his affidavit that the "total sum of commissions" earned by the D'Onofrios "equals eighty percent (80%) of the total commission on the sales" and multiplies that amount by 1.25 to determine the "missing twenty percent (20%)," without ever explaining where he derived the relevant eighty-percent and twenty-percent figures.

[9] While it is unclear whether the district court relied upon the Allen and Hankamer affidavits in granting summary judgment, the Baker affidavit is the only evidence of damages in the record, and the district court's final order awarded damages to Vacation in precisely the amount calculated by Baker.

11

interrogatories and to depose a corporate representative of Vacation pursuant to Rule 30(b)(6).[10]  The district court never ruled on that motion; it simply terminated the motion when it granted Vacation's motion for summary judgment.  Finding the evidence in the record sufficient to reverse the grant of summary judgment against Michael, we need not reach the issue.

## C.

Karen contends that the district court erred by granting summary judgment against her on her claims of FMLA interference and hostile work environment.  She contends that Vacation interfered with her right to FMLA leave by requiring her to perform work while on leave and that the district court erred by granting summary judgment *sua sponte* on her hostile work environment claim without giving her prior notice as required under Rule 56(f).  We affirm the district court with respect to the FMLA claims, but find reversible error with respect to the hostile work environment claim.

### 1.

An employee is generally entitled to up to 12 weeks of unpaid leave to care for a spouse with a serious health condition, and employers may not interfere with the employee's attempt to take such leave.  *See* 29 U.S.C.  §§ 2612(a)(1)(C) & (c), 2615(a)(1).  To establish a claim for FMLA interference, an employee must show that the defendant "interfered with, restrained, or denied her exercise or attempt to exercise FMLA rights, and that the violation prejudiced her."  *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015) (quoting *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir. 2013)).  "An 'interference claim merely requires proof that the employer denied the employee [her] entitlements under the FMLA.'"  *Acker*

---

[10] The district court had previously entered an order quashing all standard discovery and permitting only that discovery specifically ordered by the court.  Accordingly, at the time of Michael's motion, no Rule 26 disclosures had been made and no interrogatories served.

*v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (quoting *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006)).

The parties agree that Karen was given the option to either take unpaid leave or continue to service her existing accounts while on leave in order to continue to earn commissions on those accounts. Giving employees the option to work while on leave does not constitute interference with FMLA rights so long as working while on leave is not a condition of continued employment. *See Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1159-60 (8th Cir. 2016) (noting that FMLA regulations "permit voluntary and uncoerced acceptance of work by employees on medical leave, so long as acceptance is not a condition of employment"); *cf. Evans v. Books-a-Million*, 762 F.3d 1288, 1297 (11th Cir. 2014) (noting that an employer may violate employee's FMLA rights by *coercing* her to work while on leave). Here, Karen entered a joint statement of fact stating that she was presented with the two options and that she chose to continue servicing her existing accounts. Accordingly, Vacation did not interfere with Karen's FMLA rights and we affirm the grant of summary judgment on Karen's FMLA claims.

**2.**

Karen maintains that the district court also erred by granting summary judgment *sua sponte* on her hostile work environment claim without giving prior notice. While district courts may grant summary judgment *sua sponte*, *see Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1397 (5th Cir. 1994), they must first give the parties "notice and a reasonable time to respond," Fed. R. Civ. P. 56(f).[11] We have "strictly enforced" the notice requirement. *Leatherman*, 28 F.3d at 1397. However, "the harmless

---

[11] Prior to 2010, the notice requirement was contained in Rule 56(c), which defined a ten-day notice requirement. *See Leatherman*, 28 F.3d at 1397.

error doctrine applies to lack of notice required by rule 56[f]," and the *sua sponte* grant of summary judgment may be affirmed "if the nonmoving party admits that he has no additional evidence anyway" or if "the appellate court evaluates all of the nonmoving party's additional evidence and finds no genuine issue of material fact." *Id.* at 1398 (quoting *Powell v. United States*, 849 F.2d 1576, 1580, 1582 (5th Cir. 1988)).[12]

Here, the district court granted summary judgment on Karen's hostile work environment claim despite there being no pending motion for summary judgment on that claim. It erred by failing to give notice of its intent to grant summary judgment *sua sponte*, as required by Rule 56(f).[13] Vacation defends that error as harmless because, according to Vacation, Karen failed to present sufficient evidence to support her hostile work environment claim. However, Karen's failure to marshal sufficient evidence *before* receiving any notice that the district court was considering the merits of her hostile work environment claim does not mean that the error was harmless. She contends that, had she received notice, she would have deposed key Vacation witnesses, including the individual employees who allegedly harassed her, and issued written discovery

---

[12] Vacation contends that our review should be for plain error because Karen challenges the grant of summary judgment for the first time on appeal. However, we apply plain-error review when "the party against whom summary judgment is granted moves for reconsideration under Fed. R. Civ. P. 59(e), but does *not*, in that motion, challenge the procedural propriety of the summary judgment ruling." *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 771 (5th Cir. 2000). Here, Karen did not file any Rule 59(e) motion. Instead, she directly appealed the grant of summary judgment, which we permit. *See Conley v. Bd. of Trs. of Grenada Cty. Hosp.*, 707 F.2d 175, 178 (5th Cir. 1983) (stating that the non-moving party "could have sought direct appeal" from the *sua sponte* grant of summary judgment without notice).

[13] The district court also erred by failing to state the reasons for granting summary judgment with respect to the hostile work environment claim on the record, as is required by Rule 56(a). *See* Fed. R. Civ. P. 56(a) ("The court should state on the record the reasons for granting or denying the motion.").

14

to Vacation on her harassment claim.[14]    Where, as here, the lack of notice deprived the non-moving party of the opportunity to collect and submit summary judgment evidence, the error is not harmless.  *See Powell*, 849 F.2d at 1582.  We therefore reverse the grant of summary judgment on Karen's hostile work environment claim.

## D.

The D'Onofrios next contend that the district court erred by granting summary judgment in favor of Vacation on its various claims against them. We address each claim in turn.

## 1.

Karen contends that the district court erred by granting summary judgment on Vacation's claim for breach of contract.  She insists that the covenants not to compete that Vacation alleges she breached were unreasonable and therefore unenforceable under Texas law.  We agree that the covenants are unreasonable as written.

Reasonable covenants not to compete serve the legitimate business interest of preventing departing employees from "using the business contacts and rapport established" during their employment to take the employer's clients with them when they leave.  *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 387 (Tex. 1991).  A covenant not to compete is enforceable under Texas law if it is "ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are

---

[14] Any delay in discovery with respect to Karen's hostile work environment claim in the 11 months between the time it was filed and the time the district court granted summary judgment appears not to be a failure on her part.  The district court had issued an earlier order quashing standard discovery and permitting discovery only as ordered by the court, and it does not appear that the district court ever set a discovery schedule for the hostile work environment claim.

reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com. Code § 15.50(a).[15]   In the case of personal services occupations, such as salespersons, the employer has the burden of establishing that covenants not to compete meet the requirements of § 15.50. Tex. Bus. & Com. Code § 15.51(b). If a court determines that a covenant not to compete does not contain reasonable time, geography, and scope limitations, but is otherwise enforceable, then it "shall reform the covenant to the extent necessary to cause the limitations contained in the covenant" to be "reasonable and to impose a restraint that is not greater than necessary." *Id.* § 15.51(c).

Under Texas law, covenants not to compete that "extend[] to clients with whom the employee had no dealings during [her] employment" or amount to industry-wide exclusions are "overbroad and unreasonable." *Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 654 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (quoting *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex. App.—Houston [14th Dist.] 1996, writ denied)). Similarly, the absence of a geographical restriction will generally render a covenant not to compete unreasonable. *See Peat Marwick Main & Co.*, 818 S.W.2d at 387 (stating that a restrictive covenant "must not restrain [a former employee's] activities into a territory into which his former work has not taken him" (quoting *Wis. Ice & Coal Co. v. Lueth*, 250 N.W. 819, 820 (Wis. 1933))). Here, the covenants at issue prohibit Karen—for a period of 18 months after her employment with Vacation—from, among other things, working "in any capacity" for "any direct or indirect competitor of VTG in any job related to sales or marketing of cruises, escorted or independent tours, river cruises,

---

[15] The parties do not dispute that the covenants here at issue were part of an otherwise enforceable agreement.

safaris, or resort stays" or doing any business with "any person or entity" who has purchased a cruise or other travel product from Vacation in the preceding 3 years.  The covenants amount to an industry-wide restriction—preventing former employees from working in any job related to the sales or marketing of not just cruises, but also a host of other travel products—and are not limited as to either geography or clients with whom former employees actually worked during their employment.   Accordingly, they amount to unreasonable restraints on trade and are therefore unenforceable.  *See Gallagher Healthcare Ins. Servs.*, 312 S.W.3d at 654; *Wright v. Sport Supply Grp., Inc.,* 137 S.W.3d 289, 298 (Tex. App.—Beaumont 2004, no pet.) (holding that covenant that included geographical restriction but did "not limit the prohibitions just to customers with whom [the former employee] had dealings while he was employed" was "over broad" and an "unreasonable restraint[] of trade").

Section 15.51 of the Texas Business and Commerce Code requires courts to reform covenants found to be unreasonable as to time, geographical area, or scope of activity.  Tex. Bus. & Com. Code § 15.51(c).  However, such reformation is impossible when, as here, the record lacks the requisite information concerning either the geographical territories in which the former employee worked or the customers with whom she did business.  A remand is therefore appropriate to permit the district court to make those initial determinations and reform the covenants accordingly.  *See Wright*, 137 S.W.3d at 299 (remanding to trial court for reformation where record was unclear as to who former employee's customers were).

No. 16-20628

**2.**

The D'Onofrios further assert that the district court erred by granting summary judgment on Vacation's conversion of confidential information claims. Finding material disputes of fact, we agree and reverse.

"The elements of a conversion cause of action are: (1) the plaintiff[] owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused plaintiff's demand for the return of the property." *Cuidado Casero Home Health of El Paso, Inc. v. Ayuda Home Health Care Servs., LLC*, 404 S.W.3d 737, 748 (Tex. App.—El Paso 2013, no pet.). There is no cause of action under Texas law for "conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted." *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. App.—Dallas 2001, no pet.). For example, illegally taking a list of customer information can give rise to a claim for conversion. *See Deaton v. United Mobile Networks, L.P.*, 926 S.W.2d 756, 763 (Tex. App.—Texarkana 1996) ("[T]he illegal taking of the customer information would constitute conversion."), *aff'd in part, rev'd in part on other grounds*, 939 S.W.2d 146 (Tex. 1997).

Vacation argues that Karen had access to its confidential information and trade secrets, including customer lists, while involved with CruiseOne, but the only tangible property that it alleges she converted is a laptop computer. Even assuming that electronic information accessible through a laptop is the kind of "document" with which intangible rights can be merged and that can

thus be converted,[16] there is a dispute of fact as to whether Karen exercised dominion or control over that information in an unlawful manner. Vacation points to evidence that Karen had access to such information, including during the time in which she was on FMLA leave but also involved with the CruiseOne franchise, but Karen points to evidence that she did not access any confidential information during that time and that, in fact, she was unable to do so because her access to Vacation's network had been terminated. Furthermore, there is no evidence that Karen shared any confidential information with Michael or that Michael otherwise unlawfully exercised control over any such information.[17] Accordingly, a reasonable jury could find that the D'Onofrios did not access or exercise control over customer lists or any other confidential information by unlawful means.

There is also a dispute of fact as to whether Karen refused Vacation's demand for the return of the property. Vacation points to a March 2014 e-mail from Vacation's president reminding all employees that they were "prohibited by their employment contracts and Texas law from diverting or stealing leads or sales, or otherwise competing with VTG, while working for VTG or for eighteen months after leaving VTG." It argues that that e-mail constituted a demand for return of VTG property which Karen ignored by maintaining possession of the laptop while involved with CruiseOne approximately six months later. A reasonable jury could find that the March 2014 e-mail was not a demand for the return of the laptop.

---

[16] We note that Vacation frames its conversion claim as a claim for conversion of confidential information only, and does not contend that Karen converted the laptop itself.

[17] While Karen did share a screenshot of her sales record with Michael, which Michael subsequently sent to CruiseOne, Vacation offers no argument for why that information was confidential. The shared screenshot included only information on the volume and amount of Karen's sales, not on the customers with whom she did business.

Finally, "[a] plaintiff must prove damages before recovery is allowed for conversion." *United Mobile Networks, LP v. Deaton*, 939 S.W.2d 146, 147 (Tex. 1997). The measure of damages for a conversion claim is generally "the fair market value of the property at the time and place of the conversion." *Id.* at 147-48. However, the only evidence of damages put forth by Vacation was the speculative affidavit of Vacation's Senior Director of Sales, discussed above, calculating his estimate of the total gross revenues generated by the D'Onofrios' CruiseOne franchise. Aside from the speculative nature of the calculation, Vacation failed to establish that the full gross revenues that the D'Onofrios generated was equal to the fair market value of the allegedly converted confidential information. In fact, Vacation points to only one former Vacation customer, by the name of Focke, who did any business with the D'Onofrios. Accordingly, we reverse the grant of summary judgment on this claim.

**3.**

The D'Onofrios next challenge the district court's grant of summary judgment on Vacation's claims against them for tortious interference with a prospective business relationship and tortious interference with an existing business relationship. We find issues of material fact that preclude summary judgment and reverse.

The elements of tortious interference with a prospective business relationship are "that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result."

No. 16-20628

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

Here, there is question of material fact as to the first element. Vacation argues that there is a reasonable probability that it would have entered into business relationships with clients who had either previously booked travel with Vacation or contacted it for travel bookings. However, the only evidence of a possible future business relationship that Vacation points to is a single customer, Focke, who had previously booked a cruise for her parents through Vacation and subsequently booked a vacation through the D'Onofrios. But Focke testified that she never had any plans to book another cruise. A reasonable jury could conclude that there was not a reasonable probability that Focke would have entered into a business relationship with Vacation in the future. Accordingly, the district court erred by granting summary judgment on this claim. *See Caller-Times Pub. Co. v. Triad Commc'ns, Inc.*, 855 S.W.2d 18, 24-25 (Tex. App.—Corpus Christi 1993, no writ) (finding evidence insufficient to establish tortious interference with a prospective business relationship where evidence of future relationship was speculative).

To the extent that Texas recognizes a cause of action for tortious interference with an existing business relationship,[18] its elements are: "(1)

---

[18] The D'Onofrios contend that there is no cause of action for tortious interference with an *existing* business relationship, only tortious interference with a *contract* or tortious interference with a *prospective* business relationship. In *Whisenhunt v. Lippincott*, 474 S.W.3d 30 (Tex. App.—Texarkana 2015, no pet.), the Texas Appeals Court noted the uncertainty whether tortious interference with an existing business relationship and tortious interference with a contract are separate torts, but then simply listed the elements of tortious interference with a contract as the elements for tortious interference with an existing business relationship. *See id.* at 44 & n.14. The Texas Supreme Court recently stated that "Texas law recognizes two types of tortious-interference claims: one based on interference with an existing contract and one based on interference with a prospective business relationship." *El Paso Healthcare Sys. Ltd. v. Murphy*, 518 S.W.3d 412, 421 (Tex. 2017). We find it unnecessary to resolve the issue as Vacation has failed to establish that it is entitled to judgment as a matter of law on either claim. To the extent its claim should be construed

21

No. 16-20628

unlawful actions undertaken by [the defendant] without a legal right or justifiable excuse; (2) with the intent to harm [the plaintiff]; and (3) resulting actual harm or damage." *Am. Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 335 (Tex. App.—Houston [14th Dist.] 1991, no writ); *accord Apani Sw., Inc. v. Coca-Cola Enters.*, 300 F.3d 620, 633-34 (5th Cir. 2002) (citing *Morris v. Jordan Fin. Corp.*, 564 S.W.2d 180, 184 (Tex. Civ. App.—Tyler 1978, writ ref'd n.r.e.)). "It is not necessary to establish the existence of a valid contract, but the interference with a general business relationship is actionable only if the defendant's interference is proven to be motivated by malice." *CF & I Steel Corp. v. Pete Sublett & Co.*, 623 S.W.2d 709, 715 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

Here, at the very least, a question of material fact as to whether Vacation suffered any actual harm or damage precludes summary judgment. As discussed above, Vacation points to only one individual with whom it even arguably had an existing business relationship, and that individual testified that she did not intend to ever purchase another cruise. Accordingly, Vacation has failed to show as a matter of law that the D'Onofrios caused it any harm by doing business with Focke.

**4.**

Michael also challenges the district court's grant of summary judgment on Vacation's claims against him for conspiracy to covert confidential information and conspiracy to interfere with existing business relationships.[19]

---

as a claim for tortious interference with a contract, it has not pointed to any existing contract with which the D'Onofrios allegedly interfered.

[19] While the parties' briefs also address a conspiracy to commit conversion claim against Karen, Vacation's Second Amended Counterclaim against Karen did not allege a conspiracy count, and its motion for summary judgment sought judgment on conspiracy claims against Michael only. In any event, any conspiracy claims against Karen would fail for the same reasons as the conspiracy claims against Michael.

The elements of civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). However, conspiracy is a derivative tort, and a defendant's liability for conspiracy "depends on participation in some underlying tort." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Where the underlying tort claim fails, so too does the conspiracy claim. *See Grant Thornton, LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 930-31 (Tex. 2010). Because we reverse summary judgment on the underlying claims for conversion and tortious interference, so, too, do we reverse summary judgment on the conspiracy claims.

**5.**

Next, the D'Onofrios challenge the district court's grant of summary judgment in favor of Vacation on its claims for breach of fiduciary duty against Karen and knowing participation in a breach of fiduciary duty against Michael. We find the evidence insufficient to support summary judgment and reverse.

"The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship must exist between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Hunn v. Dan Wilson Homes, Inc*, 789 F.3d 573, 581 (5th Cir. 2015) (quoting *Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472, 479 (Tex. App.—Dallas 2010, no pet.)). A third party who knowingly participates in the breach of a fiduciary duty "becomes a joint tortfeasor with the fiduciary and is liable as such." *Id.* (quoting *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942)). "To establish a claim for knowing participation in a breach of fiduciary duty, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third

party was aware that it was participating in the breach of a fiduciary relationship." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (applying Texas law).

Karen first denies that she was in a fiduciary relationship with Vacation. It is generally true that employees are not fiduciaries of their employers simply by virtue of the employment relationship. However, under common-law principles of agency, employees do owe certain limited fiduciary duties to not compete with their employers. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 202 (Tex. 2002). The scope of such duties has been carefully and narrowly drawn to balance "an employer's right to demand and receive loyalty" with "society's legitimate interest in encouraging competition." *Id.* at 201. "An at-will employee may properly plan to go into competition with his employer and may take active steps to do so while still employed." *Id.* (quoting *Augat, Inc. v. Aegis, Inc.*, 565 N.E.2d 415, 419 (Mass. 1991)). However, an employee "may not appropriate his employer's trade secrets[,] . . . solicit his employer's customers while still working for his employer . . . , [or] carry away certain information, such as lists of customers." *Id.* at 202 (quoting *Augat, Inc.*, 565 N.E.2d at 419-20); *accord M P I, Inc. v. Dupre*, 596 S.W.2d 251, 254 (Tex. Civ. App.—Fort Worth 1980, writ ref'd n.r.e.) ("It is only when an employee uses his official position to gain a business opportunity which belongs to his employer or when he actually competes for customers while still employed that a legal wrong will have accrued.").

Vacation contends that Karen breached her fiduciary duty by becoming a fifty-percent owner in the franchise of a competitor, using a screenshot of her sales record at Vacation to obtain the competing franchise, attending a training for that competitor, and working for that competing franchise while still employed by Vacation. However, becoming the part owner of a competing franchise is insufficient to establish breach of a fiduciary duty. *See Abetter*

*Trucking Co. v. Azripe*, 113 S.W.3d 503, 511 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("To form his own company, Azripe had to incorporate or otherwise establish a business entity, obtain permits, and obtain insurance. These were permissible preparations to compete, not breaches of a fiduciary duty."). The same is true of the screenshot of Karen's sales records. The screenshot did not include client names, only sales information, and there is no evidence that the list was used for any purpose other than to demonstrate Karen's sales abilities. Similarly, attending a training for a competitor is an "active step" towards going into competition with one's employer but does not involve the appropriation of the employer's trade secrets, confidential information, or customers.

There is some evidence that Karen answered the phones for the CruiseOne franchise as early as July 2014 (approximately a month before she believed she had been terminated). In a July 27, 2014 e-mail—which appears to relate to home repairs and not travel sales—Michael provides the phone number for "our travel agency" and states that "mostly Karen works this as her business line." However, there is no evidence that Karen actually spoke to customers on the phone or that she used her position at Vacation "to gain a business opportunity belonging to" Vacation or solicited business away from Vacation while still employed by Vacation.[20] *See Bray v. Squires*, 702 S.W.2d

---

[20] The only evidence that Vacation points to in the record of Karen's providing travel services to CruiseOne customers occurred in September 2014, after Karen contends that she believed she had been terminated. An employee's fiduciary duty to not compete with her employer ends when the employment relationship ends. *See Bray*, 702 S.W.2d at 270 ("[O]nce an employee resigns, he may actively compete with his former employer."). Here, there is a factual dispute as to when the employment relationship was terminated. A jury could conclude that the employment relationship—and, with it, Karen's fiduciary duty to not compete—ended by August 11, 2014; on that day a Vacation manager sent an e-mail indicating that Karen no longer worked at Vacation, and by then the company had already locked Karen out of its computer network. While the duty to not use "confidential or proprietary information acquired during the [employment] relationship . . . survives termination of employment," *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965

266, 270-71 (Tex. App.—Houston [1st Dist.] 1985, no writ) (affirming jury verdict that former associates did not breach fiduciary duties where record was open to the interpretation that the defendants had discussions with, but did not solicit business from, law firm's client before leaving firm).

Furthermore, while there is some evidence that the D'Onofrios *wanted* to use Karen's book of business from Vacation to build up their CruiseOne business, there is also evidence that the sales Karen generated for CruiseOne were the result of her own personal contacts and not any sales lists or other confidential information from Vacation. *See Ameristar Jet Charter, Inc. v. Cobbs*, 184 S.W.3d 369, 374-75 (Tex. App.—Dallas 2006, no pet.) (finding evidence sufficient to support jury's finding of no breach of fiduciary duty where former employee denied taking confidential information and testified that he solicited business using publicly available information); *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd) (stating that duty to not disclose confidential information "does not bar use of general knowledge, skill, and experience"). A reasonable jury could conclude that Karen did no more than prepare to compete with Vacation while still employed by it, and thus did not breach her fiduciary duty.

Summary judgment on the claim against Michael for knowing participation in the breach of a fiduciary duty cannot stand for the same reasons. Because Vacation failed to establish that there is no dispute of material fact as to whether Karen breached her fiduciary duty, it necessarily failed to establish that there is no dispute of material fact as to whether

---

S.W.2d 18, 22 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd), there is no evidence that the September 2014 communication involved the use of any confidential or proprietary information.

No. 16-20628

Michael participated in any such breach.  We reverse the grant of summary judgment on these claims.

**6.**

We next turn to the district court's grant of summary judgment on Vacation's fraud claims.  Vacation asserted claims against Karen for common-law fraud and fraud by nondisclosure, alleging that she misrepresented her need for FMLA leave and failed to disclose her ownership interest in the CruiseOne franchise and the fact that she was using her FMLA leave to travel and attend a CruiseOne training.  Once again, we find disputes of material fact and reverse.

The elements of common-law fraud are:  "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).  Vacation claims that Karen made false representations regarding her need for FMLA leave, but a dispute of material fact as to her purpose in taking leave precludes summary judgment.

There is evidence that Karen made plans to attend the CruiseOne training in Florida before she made arrangements to go on leave, suggesting that her purpose in taking leave may  have been to attend the training rather than care for Michael.  However, that she did attend training while on leave does not itself establish that she misrepresented her need for FMLA leave.  Vacation does not dispute that Michael needed care, and there is evidence suggesting that Karen did, in fact, care for him while on leave.  Karen also

testified that she was not even aware of the possibility of taking FMLA leave until it was suggested to her by her supervisor, who was aware of the stress she was under while working and also taking care of Michael. Accordingly, there is evidence from which a reasonable jury could conclude that Karen did not misrepresent her need for FMLA leave.

The district court also granted summary judgment on Vacation's claim for fraud by nondisclosure. "The elements of fraud by nondisclosure are (1) the defendant failed to disclose material facts to the plaintiff that the defendant had a duty to disclose; (2) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts; (3) the defendant was deliberately silent when the defendant had a duty to speak; (4) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting; (5) the plaintiff relied on the defendant's nondisclosure; and (6) the plaintiff was injured as a result of acting without that knowledge." *White v. Zhou Pei*, 452 S.W.3d 527, 537 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Vacation first argues that Karen failed to disclose her intent to compete with it as the partial owner of a CruiseOne franchise. This claim fails for essentially the same reasons as the breach-of-fiduciary-duty claim. "[A]n employee who plans to compete with his employer has no general duty to disclose his plans." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 285 (5th Cir. 2007) (citing *Johnson*, 73 S.W.3d at 201). As discussed above, a reasonable jury could conclude that Karen made plans to compete with Vacation but did not actively engage in any competitive conduct until after she believed that she had been terminated. Accordingly, a reasonable jury could find that she did not have a duty to disclose her plans.

Vacation also argues that Karen failed to disclose her intention to attend a CruiseOne training while on FMLA leave. However, even assuming that the

No. 16-20628

other elements have been met, Vacation's evidence with respect to damages is insufficient to establish injury as a matter of law.  As discussed above with respect to the Baker affidavit, a reasonable jury could conclude that Vacation failed to establish an injury caused by Karen's allegedly wrongful conduct.

**E.**

Finally, the D'Onofrios argue that the district court committed a number of errors relating to the relief awarded to Vacation.  Because we reverse summary judgment on all of Vacation's claims against the D'Onofrios, we also vacate the district court's award of damages, injunctive relief, and attorneys' fees.

We note that the award of damages was independently erroneous in light of the infirm evidence used to support it, as discussed above.  Furthermore, with respect to attorneys' fees, the district court awarded Vacation $50,000 in fees "in the event an appeal is filed with the Fifth Circuit Court of Appeals," and additional fees if a petition for *certiorari* is filed with the Supreme Court.  However, "[a] trial court may not grant an unconditional award of appellate attorneys' fees." *Rittgers v. Rittgers*, 802 S.W.2d 109, 115 (Tex. App.—Corpus Christi 1990, writ denied); *accord Hughes v. Habitat Apartments*, 828 S.W.2d 794, 795 (Tex. App.—Dallas 1992, no writ) ("A trial court must condition an award of appellate attorney's fees upon the appellant's unsuccessful appeal.").  What's more, under Texas law, the recovery of attorneys' fees must be authorized by statute, *see Tony Gullo Motors I, LP v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006), and we have been offered no such authorization here.  While Texas law authorizes the recovery of attorneys' fees for claims based on "an oral or written contract,"—as well as seven other categories of claims not relevant here—*see* Tex. Civ. Prac. & Rem. Code § 38.001(8), for claims involving the breach of a covenant not to compete, section 15.51(c) of the Texas Business and Commerce Code "preempts an award of [attorney's] fees under

29

any other law." *Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 645 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (alternation in original) (quoting *Perez v. Tex. Disposal Sys., Inc.*, 103 S.W.3d 591, 594 (Tex. App.—San Antonio 2013, pet. denied)). And section 15.51(c) "makes no provision for an award of fees to an employer." *Id.*

## III.

For the foregoing reasons, we AFFIRM in part, REVERSE in part, VACATE the awards of damages, injunctive relief, and attorneys' fees, and REMAND for further proceedings consistent with this opinion.