# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 29, 2009

Charles R. Fulbruge III
Clerk

No. 09-10061
Summary Calendar

DEBORAH RAE HANDLEY,

Petitioner-Appellant,

versus

W. ELAINE CHAPMAN, Warden, FMC Carswell;
FEDERAL BUREAU OF PRISONS,

Respondents-Appellees.

Appeal from the United States District Court
for the Northern District of Texas

Before SMITH, DENNIS, and OWEN, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Deborah Handley appeals, *pro se*, the dismissal, for lack of ripeness and standing, of her petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2241. We vacate the dismissal and render judgment on the merits for defendants.

Handley was imprisoned for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). She applied for the residential drug abuse program ("RDAP") of the Federal Bureau of Prisons ("BOP") but was denied eligibility for placement. The relevant statute, 18 U.S.C. § 3621(e)(2)(B), empowers the BOP to grant a discretionary sentence reduction not exceeding one year to an inmate convicted of a nonviolent felony who successfully completes the drug abuse program.

The BOP exercised its discretion in issuing an implementing regulation that categorically excludes early-release eligibility for those inmates whose "current offense is a felony . . . . [t]hat involved the carrying, possession, or use of a firearm." 28 C.F.R. § 550.58(a)(1)(vi)(B). That regulation was held to be a reasonable exercise of the BOP's statutory authority in *Lopez v. Davis*, 531 U.S. 230 (2000). But in *Arrington v. Daniels*, 516 F.3d 1106 (9th Cir. 2008), the court invalidated the BOP's categorical exclusion because, in the court's view, the agency had failed to articulate a rationale for its policy choice in the administrative record. Citing *Arrington*, Handley challenges the regulation as arbitrary and capricious under § 706 of the Administrative Procedure Act ("APA").

We decline to follow *Arrington*, concluding instead that public safety was the contemporaneous rationale for the BOP's policy. We held valid a prior version of the regulation in *Venegas v. Henman*, 126 F.3d 760, 765 (5th Cir. 1997), and the BOP complied with the APA's procedural requirements when it changed course from that prior regulation. Alternatively, we conclude that the BOP's newest version of the regulation, codified at 28 C.F.R. § 550.55, applies to Handley, because its application would not have an impermissible retroactive effect. Handley's arbitrary-and-capricious challenge fails as to this newest rule, because BOP's comment to § 550.55 includes a detailed rationale for its policy choice.

2

I.

Title 18 U.S.C. § 3621 governs the imprisonment of persons convicted of federal crimes. In 1990, Congress amended the statute to provide that "[t]he Bureau shall . . . make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance abuse addiction or abuse." Pub. L. 101-647, § 2903, 104 Stat. 4913. Congress again amended the statute in 1994 to encourage prisoner participation by providing an early-release incentive that states, "The period a prisoner convicted of a non-violent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." 103 Pub. L. No. 322, § 32001, 108 Stat. 1796, 1896-97 (codified at 18 U.S.C. § 3621-(e)(2)(B)).

In 1995, the BOP published its first rule and implementing regulation defining early-release criteria under § 3621(e). *See* 60 Fed. Reg. 27692-27695; 28 C.F.R. § 550.58. Congress had explicitly limited the incentive to prisoners convicted of "non-violent offense[s]" but had not defined that term. The BOP filled the gap by adopting the definition of "crime of violence" contained in 18 U.S.C. § 924(c)(3). Several months later, it issued a program statement in which it defined "crimes of violence" to include firearms convictions under 18 U.S.C. § 922(g) and drug-trafficking convictions under 21 U.S.C. § 841 that involved possession of a firearm. Program Statement No. 5162.02, §§ 7, 9 (July 24, 1995). The courts of appeals divided over the validity of both categorizations.[1]

---

[1] *Compare Davis v. Crabtree*, 109 F.3d 566, 569 (9th Cir. 1997) (holding that defining § 922(g) as a "crime of violence" conflicted with judicial precedent), *with Cook v. Wiley*, 208 F.3d 1314, 1322 (11th Cir. 2000) (stating that BOP could characterize a § 922(g) conviction as a "crime of violence"); *compare also Venegas v. Henman*, 126 F.3d 760, 763 (5th Cir. 1997) (upholding BOP's classification of drug offenses attended by firearm possession as violent crimes), *and Pelissero v. Thompson*, 170 F.3d 442, 447 (4th Cir. 1999) (same), *with Martin v. Gerlinski*,

(continued...)

In response to the lack of consistency arising from the split among the circuits, the BOP in 1997 issued an interim rule that no longer tied eligibility to the definition of "nonviolent offense" or "crime of violence." *See* 62 Fed. Reg. 53690 (Oct. 15, 1997). The new rule, 28 C.F.R. § 550.58(a)(1), relied instead on the discretion vested in the agency to issue additional early-release criteria beyond those mandated by § 3621(e)(2)(B).

The 1997 rule provided, in relevant part, as follows: "As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release:

. . . (vi) Inmates whose current offense is a felony:

(A) That has as an element, the actual, attempted, or threatened use of physical force against the person or property of another, or

(B) That involved the carrying, possession, or use of a firearm or other dangerous weapon . . . .

28 C.F.R. § 550.58(a)(vi) (1998). Thus, under the 1997 rule, felon-in-possession-of-firearm offenses and drug-trafficking offenses with a sentence enhancement for use of a firearm were no longer "violent" offenses but were rather "nonviolent offenses" that were ineligible for the early-release incentive because of the nature of the preconviction conduct. The BOP also published a new program statement that included felon-in-possession offenses under 18 U.S.C. § 922(g) and drug-trafficking offenses with a sentence enhancement for firearm use within the category of "Offenses That at the Director's Discretion Shall Preclude an Inmate's Receiving Certain Bureau Program Benefits." Program Statement

---

[1] (...continued)
133 F.3d 1076, 1079 (8th Cir. 1998) (concluding that BOP could "look only to the offense of conviction . . . and not to sentencing factors . . . in determining whether an offender was convicted of a nonviolent offense").

5162.04, § 7 (Oct. 9, 1997).

The amended rule produced more litigation and another divide among the circuits––this time, as to whether the BOP had acted within the permissible bounds of its discretion in narrowing the class of prisoners eligible for early release under § 3621(e).[2]

In *Lopez*, the Court held that the BOP could, within its discretion, categorically deny early release eligibility to all inmates who possessed a firearm in connection with their current offense. The Court then concluded that the 1997 interim rule was a reasonable exercise of that discretion:

> Having decided that the Bureau may categorically exclude prisoners based on their preconviction conduct, we further hold that the regulation excluding Lopez is permissible. The Bureau reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision.

*Lopez*, 531 U.S. at 244.

*Lopez*, however, did not dispositively establish the validity of the categorical exclusion, which is why that policy continues to be litigated. As an initial matter, the Court expressly declined to consider whether the 1997 interim rule complied with the APA's notice-and-comment requirements. *Id.* at 245 n.6. Moreover, the above-stated rationale for the BOP's policy––that prior firearm possession in connection with a felony suggests a risk of life-endangering recidivism––was not explicitly contained in the administrative record. Rather, the Court, in making that statement, relied on the BOP's brief. *See Lopez*, 531 U.S. at 236. In short, the *Lopez* Court held that the categorical exclusion of early

---

[2] *Compare Bellis v. Davis*, 186 F.3d 1092, 1095 (8th Cir. 1999) (concluding that the 1997 rule was a permissible exercise of BOP discretion), *and Bowen v. Hood*, 202 F.3d 1211, 1220 (9th Cir. 2000), *with Ward v. Booker*, 202 F.3d 1249, 1256-57 (10th Cir. 2000), *and Kilpatrick v. Houston*, 197 F.3d 1134, 1135 (11th Cir. 1999) (reaching the opposite result).

release eligibility for felons in possession of a firearm was a permissible exercise of BOP discretion reasonably executed, but the Court did not hold that 28 C.F.R. § 550.58(a) satisfied the APA's procedural requirements.

By 2000, the BOP had promulgated a final version of the 1997 interim rule, with essentially identical language, after notice and comment. *See* 65 Fed. Reg. 80745 (Dec. 22, 2000), codified at 28 C.F.R. § 550.58(a). The Ninth Circuit in *Arrington*, 516 F.3d at 1114, held the BOP's final rule invalid under § 706-(2)(A) of the APA because BOP had "failed to set forth a rationale for its decision to categorically exclude prisoners convicted of [firearm possession] offenses."

The *Arrington* panel rejected two rationales offered by the BOP in defending the regulation. The first––the public safety rationale cited with favor in *Lopez*––was "entirely absent from the administrative record" and was thus the sort of "'*post hoc* rationalization[]' of appellate counsel that we are forbidden to consider in conducting review under the APA." *Id.* at 1113 (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). The second––the need for uniformity in the application of the eligibility regulation––though articulated in the administrative record, provided "no explanation for why the Bureau exercised its discretion" by categorical exclusion rather than categorical inclusion. *Id.* at 1113-14. In other words, in the Ninth Circuit's view, the BOP's uniformity rationale failed under arbitrary-and-capricious review because the BOP could have reached that goal just as easily through categorical eligibility, and the administrative record did not provide a rationale for the decision categorically to exclude. *Id.*

The two circuits that have had the opportunity to consider *Arrington* have declined to follow it.[3] The overwhelming majority of district courts, given the

---

[3] *See Gatewood v. Outlaw*, 560 F.3d 843 (8th Cir. 2009), *petition for cert. filed* (June 23, 2009) (No. 09-5089); *Muolo v. Quintana*, No. 09-1213, 2009 U.S. App. LEXIS 21124 (3d Cir. (continued...)

opportunity, have also rejected *Arrington*.[4]

In addition, the BOP has adopted a new version of the regulation at issue, effective March 16, 2009. *See* 28 C.F.R. § 550.55. That version provides a much more detailed rationale for the categorical exclusion:

> Under 18 U.S.C. 3621(e), the Bureau has the discretion to determine eligibility for early release consideration (*See Lopez v. Davis*, 531 U.S. 230 (2001)). The Director of the Bureau exercises discretion to deny early release eligibility to inmates who have a felony conviction for the offenses listed in § 550.55(b)(5)(i)-(iv) because commission of such offenses illustrates a readiness to endanger the public. Denial of early release to all inmates convicted of these offenses rationally reflects the view that, in committing such offenses, these inmates displayed a readiness to endanger another's life. The Director of the Bureau, in his discretion, chooses to preclude from early release consideration inmates convicted of offenses involving carrying, possession or use of a firearm and offenses that present a serious risk of physical force against person or property, as described in § 550.55(b)(5)(ii) and (iii). Further, in the correctional experience of the Bureau, the offense conduct of both armed offenders and certain recidivists suggests that they pose a particular risk to the public. There is a significant potential for violence from criminals who carry, possess or use firearms. As the Supreme Court noted in *Lopez v. Davis*, "denial of early release to all inmates who possessed a firearm in connection with their current offense rationally reflects the view that such inmates displayed a readiness to endanger another's life." *Id*. at 240. The Bureau adopts this reasoning. The Bureau recognizes that there is a significant potential for violence from criminals who carry, possess or use firearms while engaged in felonious activity. Thus, in the interest of public safety, these inmates should not be released months in advance of completing their sentences.

---

[3] (...continued)
Sept. 23, 2009) (per curiam).

[4] *See, e.g., Hicks v. Fed. BOP*, 603 F. Supp. 2d 835 (D.S.C. 2009); *Cross v. Berkebile*, No. 3-08-CV-1379-M, 2009 WL 159280 (N.D.Tex. Jan. 21, 2009); *Muolo v. Quintana*, 593 F. Supp. 2d 776 (W.D. Pa. 2009), *aff'd*, No. 09-1213, 2009 U.S. App. LEXIS 21124 (3d Cir. Sept. 23, 2009) (per curiam); *Minotti v. Whitehead*, 584 F. Supp. 2d 750 (D. Md. 2008).

It is important to note that these inmates are not precluded from participating in the drug abuse treatment program. However, these inmates are not eligible for early release consideration because the specified elements of these offenses pose a significant threat of dangerousness or violent behavior to the public. This threat presents a potential safety risk to the public if inmates who have demonstrated such behavior are released to the community prematurely. Also, early release would undermine the seriousness of these offenses as reflected by the length of the sentence which the court deemed appropriate to impose.

Drug Abuse Treatment Program, 74 Fed. Reg. 1892, 1895 (Jan 14, 2009).

## II.

### A.

The district court dismissed Handley's claims for lack of standing and ripeness, because she had not actually been denied permission to participate in the residential drug abuse program at that time. We review the district court's findings of fact in a habeas appeal for clear error and its conclusions of law *de novo*. *Buntion v. Quarterman*, 524 F.3d 664, 670 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 1306 (2009).

### B.

In her *pro se* brief, Handley states that, since the district court dismissed for want of standing and ripeness, she has been denied permission to participate in the RDAP. We need not determine the accuracy of that statement, because Handley also brings a facial challenge to BOP's policy of categorically denying early release eligibility to inmates convicted as felons in possession of a firearm under 18 U.S.C. § 922(g). That policy denies her the possibility of early release under 18 U.S.C. § 3621(e) because of her current offense. She thus has standing to challenge the BOP's policy, and her claims are ripe.

8

## C.

Handley's equal protection and due process arguments can be disposed of quickly. She claims that *Arrington* creates a basis for equal protection relief for prisoners outside the Ninth Circuit. But she has not demonstrated a fundamental right or membership in a suspect class. Absent such a showing, strict scrutiny is inappropriate, and the rational-basis standard applies.[5] Handley has the burden of showing that BOP's difference in treatment would not survive rational-basis review, *Lindquist v. City of Pasadena, Tex.*, 525 F.3d 383, 387 (5th Cir. 2008), and she has not met that burden.

Handley's due process claim is equally meritless. "The Due Process Clause does not itself confer a liberty interest in a sentence reduction for completion of an RDAP." *Richardson v. Joslin*, 501 F.3d 415, 418-20 (5th Cir. 2007). In granting eligibility for early release, the BOP has broad discretion that precludes the possibility of a liberty interest in early release under § 3621. *Id.* Without a liberty interest, there is no procedural due process claim.[6] Handley's due process claim fails.

## D.

As for the administrative law issues, this case involves agency rulemaking under 5 U.S.C. § 553. That section requires "notice and comment": Subsection (b) says that "notice of proposed rule making shall be published in the Federal Register," and subsection (c) requires that the agency solicit and consider comments on its proposed rule before adopting a final version. Generally speak-

---

[5] *Rublee v. Fleming*, 160 F.3d 213, 217 (5th Cir. 1998) (holding that there is no fundamental right to early release under § 3621 and that "classification of prisoners based on the type of offense for which they were convicted [does] not implicate a suspect class") (citing *Wottlin v. Fleming*, 136 F.3d 1032, 1036-37 (5th Cir. 1998)).

[6] *See Greenholtz v. Inmates of Neb. Penal Correctional Complex*, 442 U.S. 1, 8-11 (1979); *see also Meachum v. Fano*, 427 U.S. 215, 225 (1976).

ing, this section establishes the maximum extent of procedural scrutiny a reviewing court may apply to agency rulemaking. *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.,* 435 U.S. 519, 524 (1978). "[C]ircumstances which would ever justify a court in overturning agency action because of a failure to employ procedures beyond those required by the statute . . . are extremely rare." *Id.*

We review an agency's compliance with § 553's notice-and-comment requirements under the arbitrary-and-capricious standard set forth in § 706(2)(A) of the APA, which provides that a "reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." This is a narrow and highly deferential standard. "[I]t is well-settled that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The agency must provide a "satisfactory explanation" for its action, and "a court is not to substitute its judgment for that of the agency." *Id.* But courts are encouraged to "uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974).

Before 1997, the BOP classified felon-in-possession convictions under § 922(g) as violent crimes. Under the 1997 interim rule and the 2000 final version, the BOP made a policy change. Section 922(g) violations were no longer "violent" offenses but were rather "nonviolent offenses" that were ineligible for the early-release incentive because of the nature of the preconviction conduct.

The question is whether BOP complied with the APA's procedural requirements when it adopted that policy change. An agency action representing a policy change requires "a reasoned analysis of the change beyond that which may be required when an agency does not act in the first instance." *Motor Vehicle,*

10

463 U.S. at 42. As recently clarified in *FCC v. Fox Television Stations, Inc.*, 129 S.Ct. 1800, 1811 (2009), an agency effecting a policy change is not required to show a more convincing rationale for the new policy than for the old. *Id.* An agency's change in policy is not subjected to a heightened standard or more substantial review than the scrutiny applicable to policy drafted on a blank slate. *Id.* at 1810-11. Rather, a policy change must only meet three requirements: The new policy must be permissible under the statute; there must be good reasons for it; and the agency must believe that the new policy is better, "which the conscious change of course adequately indicates." *Id.* at 1811

Applying *Motor Vehicle* and *Fox Television*, we conclude that the BOP policy survives under the arbitrary-and-capricious standard. The BOP has the statutory authority to implement its policy; that was the holding in *Lopez,* 531 U.S. at 244. There are obvious, good reasons for denying early release to inmates whose offense involved the use or possession of a firearm. We recognized the obvious public safety rationale underlying the BOP's policy even before the 1997 interim regulation.[7] The Supreme Court confirmed that in *Lopez*, 531 U.S. at 244, stating that "an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision." The agency has consistently articulated that public safety rationale in defending its policy before numerous courts for more than a decade.

We conclude, as we did in *Venegas* and as the Supreme Court did in *Lopez*, that public safety was the contemporaneous rationale for the BOP's categorical exclusion. The agency's path may be readily discerned from its prior interim rules, Program Statements, and consistent litigation position. These factors are

---

[7] *See Venegas*, 126 F.3d at 765 ("[I]n the present context of early release from prison, public safety is an important consideration that, when combined with conduct presenting a risk of violence, justifies denial of release.").

not the sort of *post hoc* rationalizations of appellate counsel that *Burlington* forbids us to consider. *See Burlington*, 371 U.S. at 168.

Finally, the BOP believed that justifying the categorical exclusions on discretionary grounds was better policy. The BOP hoped this policy change would resolve the circuit split created by its previous reliance on "crime of violence." By changing course, the agency sought to apply its eligibility regulation with uniformity. 65 Fed. Reg. at 80747. That was the motivation behind the policy change, but the categories of exclusion always remained the same, as did the underlying public safety rationale. We held in *Venegas*, 126 F.3d at 765, that the BOP's 1995 rule was substantively valid, and we have no difficulty in concluding that the BOP satisfied the APA's procedural requirements when it changed course to achieve greater uniformity. We thus join the Eighth and Third Circuits in rejecting the Ninth Circuit's decision in *Arrington*.

E.

As an alternative basis for dismissing Handley's claims, we note that the BOP's new version of the regulation at issue, codified at 28 C.F.R. § 550.55, provides a detailed public safety rationale. Even under *Arrington*, the new rule undoubtedly passes § 706 scrutiny; the only question is whether it applies to Handley.

"New procedural rules published by an agency may be made to apply to pending proceedings and also retroactively if injury or prejudice does not result therefrom." *Pac. Molasses Co. v. FTC*, 356 F.2d 386, 390 n. 10 (5th Cir. 1966) (internal citations omitted). A new regulation has an impermissible retroactive effect where its application "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006).

12

The new regulation is virtually identical to its predecessor. The only notable change is the detailed rationale for why inmates such as Handley are ineligible for early release consideration under § 3621(e). The BOP's policies as to Handley have not changed; she was ineligible for early release consideration under 28 C.F.R. § 550.58 and remains so under § 550.55.

Application of the new regulation to this case would not deprive Handley of any rights she previously possessed. Thus, § 550.55 applies to her. The new rule merely clarifies the BOP's position; its application to Handley does not create an impermissible retroactive effect. *See Hicks*, 603 F. Supp. 2d at 841-42. Under the new regulation, Handley's challenge fails, because the agency has stated a detailed rationale for its policy.

For the reasons we have explained, the dismissal for lack of standing is VACATED, and judgment is RENDERED for the defendants.