# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 17, 2022

Lyle W. Cayce
Clerk

No. 20-50963

Vista Health Plan, Incorporated; Vista Service Corporation,

*Plaintiffs—Appellants*,

*versus*

United States Department of Health and Human Services; Xavier Becerra, *Secretary, U.S. Department of Health and Human Services*; Centers for Medicare and Medicaid Services; Seema Verma, *Administrator of the Centers for Medicare and Medicaid Services*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:18-CV-824

Before Higginbotham, Stewart, and Wilson, *Circuit Judges*.
Cory T. Wilson, *Circuit Judge*:

The United States Department of Health and Human Services (HHS) implements a risk-adjustment program under the Patient Protection and Affordable Care Act (ACA) in states that choose not to implement the program themselves. The risk-adjustment program is designed to redistribute actuarial risk among health insurance plans so that sicker-than-

No. 20-50963

average individuals can obtain affordable healthcare. To effectuate the program, HHS created a three-step risk-adjustment methodology. In March 2018, a district court in New Mexico vacated HHS's risk-adjustment rules for benefit years 2014 through 2018 to the extent the rules relied on the third step of HHS's methodology. In response, HHS stated that it would not collect or pay specified risk-adjustment amounts but would issue additional guidance in the near future. In July 2018, HHS announced that it would republish the previously adopted risk-adjustment rule for the 2017 benefit year. For the 2018 benefit year, HHS promulgated a new rule in December 2018.

Once the new rules were published, Vista Health Plan, Inc., a small health insurance company in Texas, was assessed risk-adjustment fees that exceeded its premium revenue, causing the company to cease operations. The company and its parent, Vista Service Corporation, (collectively, Vista) sued HHS, HHS Secretary Alex Azar, the Centers for Medicare and Medicaid Services (CMS), and CMS Administrator Seema Verma (collectively, the HHS Defendants), challenging the risk-adjustment program and the repromulgation of the 2017 and 2018 Final Rules. The district court granted summary judgment for the HHS Defendants on eight of nine claims asserted by Vista and remanded the only remaining claim to HHS. We affirm the court's summary judgment in favor of the defendants.

## I.

## A.

The underlying facts are undisputed. Among other provisions, the ACA prohibits insurers from denying coverage or charging higher premiums based on health status. *See generally King v. Burwell*, 576 U.S. 473, 479–84 (2015) (summarizing the background and purpose of the ACA). Because sicker individuals generally incur higher costs for insurers, insurers are

disincentivized from enrolling such individuals without charging higher premiums. To counteract this, Congress enacted 42 U.S.C. § 18063, which directs HHS to establish a permanent risk-adjustment program.

Under the risk-adjustment program, fees are assessed against plans with healthier-than-average enrollees in a given state, and then payments are made to plans with sicker-than-average enrollees in that state to redistribute actuarial risk. Congress designed the risk-adjustment program to be administered by the States. Some states opted not to do so, and in those states, Congress directed HHS to operate the program. 42 U.S.C. § 18041(c)(1)(B)(ii).

To assess actuarial risk, Congress directed HHS to "establish criteria and methods" for the risk-adjustment program. 42 U.S.C. § 18063(b). In turn, HHS created a three-step risk-adjustment methodology: First, for each individual enrolled in an insurer's plan, an actuarial risk score is computed using demographic and diagnostic data to determine the predicted cost of insuring that enrollee. 78 Fed. Reg. 15,410, 15,419 (Mar. 11, 2013). Second, the risk scores for each enrollee in a plan are aggregated to determine the plan's average risk score. *Id.* at 15,432. Third, a plan's risk score is multiplied by the statewide average premium, yielding the dollar amount that a given insurer will pay as a charge or receive as a payment, for that plan for that year. *See id.* at 15,430–34; *N.M. Health Connections v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1138, 1148–50 (5th Cir. 2019) (detailing the risk adjustment program methodology). HHS has used an annual rulemaking process to refine its risk-adjustment rules, but it has not reconsidered its overarching methodology anew each year.

In March 2018, a district court in New Mexico vacated HHS's risk-adjustment rules for benefit years 2014 through 2018 to the extent they relied on the statewide average premium (the third step of the risk-adjustment

methodology).  *See Minuteman Health, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 312 F. Supp. 3d 1164, 1207–12 (D.N.M. 2018), *rev'd*, 946 F.3d 1138 (10th Cir. 2019).  Just prior, in January 2018, a district court in Massachusetts ruled in favor of HHS on the same issue.  *See Minuteman Health, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 291 F. Supp. 3d 174, 198–205 (D. Mass. 2018).

Addressing the conflicting judgments, HHS issued a press release on July 7, 2018, advising insurers that "the New Mexico district court's ruling . . . bar[red] [HHS] from collecting or making payments under the current methodology, which uses the statewide average premium."  Two days later, HHS stated it "w[ould] not collect or pay the specified amounts," but it "w[ould] inform stakeholders of any update to the status of collections or payments at an appropriate future date."  HHS added that "[a]dditional guidance w[ould] be issued in the near future regarding 2017 benefit year appeals and reporting of risk adjustment transfer amounts by issuers."

Urged by members of Congress (among various other entities) "to act with the utmost urgency to resolve the $10.4 billion hold on the risk adjustment program," HHS issued a memorandum on July 27, 2018, stating that it would republish the previously adopted risk-adjustment program rule for the 2017 benefit year.  The republished rule "utilize[d] statewide average premium for the 2017 benefit year as set forth in the rules published on March 23, 2012 . . . and March 8, 2016."  Three days later, HHS published the 2017 Final Rule, which adopted "the HHS-operated risk adjustment methodology previously published at 81 [Fed. Reg.] 12204 for the 2017 benefit year with an additional explanation regarding the use of statewide average premium and the budget neutral nature of the program."  HHS clarified that the "rule d[id] not make any changes to the previously published HHS-operated risk adjustment methodology for the 2017 benefit year."  HHS did not follow the notice-and-public-comment procedures outlined in the Administrative Procedure Act (APA) when it republished the 2017 rule.  *See* 5 U.S.C. § 553.

No. 20-50963

For the 2018 benefit year, HHS published a proposed rule on August 10, 2018, following the APA's notice-and-public-comment procedures. The 2018 rule was finally promulgated on December 10, 2018. The 2018 Final Rule adopted "the same methodology that [HHS] had previously published for the 2018 benefit year."

**B.**

Vista Health Plan, Inc., began as a small health maintenance organization that was approved by the Texas Department of Insurance (TDI) to enter the health insurance market in May 2016. Vista Health Plan, Inc., and its parent company, Vista Service Corporation, sued the HHS Defendants on September 28, 2018. Vista challenged the promulgation of the 2017 and 2018 Final Rules, HHS's calculation of Vista's risk-adjustment charges, and the risk-adjustment program more generally. Vista contended that the charges assessed against it "far exceeded Vista's gross receipts" for the 2017 and 2018 benefit years, which "caused Vista to be placed under supervision by [TDI]," and ultimately resulted in TDI directing Vista to cease "sell[ing] policies in 2019."

After filing an administrative record that included "the non-privileged administrative records of the rulemaking proceedings" for the 2017 and 2018 Final Rules, the parties filed cross-motions for summary judgment. The district court granted the HHS Defendants' motion for summary judgment on eight of nine claims alleged by Vista[1] and remanded Vista's remaining

---

[1] The district court "deduce[d] nine distinct claims against HHS" alleged in Vista's somewhat scattershot complaint. *Vista Health Plan*, 2020 WL 6380206, at *4. In discerning Vista's claims, the court noted that its review was limited "to those issues briefed" and that it would "not reach every allegation brought in Vista's complaint." *Id.* Similarly, we limit our review to the five distinct issues Vista sufficiently identifies on appeal. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("[Courts] rely on the parties to frame the issues for decision . . . ."); *see also* FED. R. APP. P. 28(a)(8)(A)

procedural due process claim to HHS.  Because Vista challenges the district court's dismissal of only five of these claims, we limit the following discussion to those appealed claims.

First, Vista argued that the 2017 and 2018 Final Rules were impermissibly retroactive.  The district court disagreed, holding that the rules were not retroactive because they "simply reinstated the obligations all regulated entities had already anticipated and acted in reliance upon," and did not "increase[] a party's liability for past conduct, or impose[] new duties with respect to transactions already completed."  *Vista Health Plan, Inc. v. U.S. Dep't of Health & Human Servs.*, No. 1:18-CV-824, 2020 WL 6380206, at *8 (W.D. Tex. Sept. 21, 2020) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 268 (1994)).

Second, Vista contended that the 2017 Final Rule should be vacated for failing to comply with APA notice-and-comment procedures.  The district court agreed that HHS was not entitled to a good-cause exception for its failure to comply with the procedures.  *Id.* at *9–10.  However, the court determined that the error was harmless because "Vista fail[ed] to present cognizable prejudice."  *Id.* at *10; *see United States v. Johnson*, 632 F.3d 912, 930 (5th Cir. 2011).

Third, Vista asserted that HHS's creation of the risk-adjustment methodology—particularly the third step regarding the statewide average premium—was inconsistent with § 18063, or otherwise arbitrary and capricious, because "[t]here [was] *no rational basis* for a formula and methodology that results in such *confiscatory* assessments."  The district court disagreed, holding that

---

(requiring the appellant to raise arguments with relevant "citations to the authorities and parts of the record on which the appellant relies").

> HHS's interpretation of Section 18063 is entitled to *Chevron* deference because "Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in . . . notice-and-comment rulemaking, or by some other indication of comparable congressional intent."

*Vista Health Plan*, 2020 WL 6380206, at \*16 (quoting *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001)).

Fourth, Vista argued that the rate adjustment charges lack a rational basis and have a disparate impact on small insurance companies like Vista, thus violating its equal protection rights. Vista also argued that its procedural due process rights were violated because it never received an evidentiary hearing to determine whether its actual risk supports the requirement to pay risk-adjustment charges. Vista asserted that it should have been given an agency adjudication on Vista's actual risk.

Applying rational basis review, the district court gave short shrift to Vista's equal protection claim. *Id.* at \*14. The court held that "small insurers are not an inherently suspect class, and the risk-adjustment program does not trammel fundamental rights." *Id.* (citing *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 139 (5th Cir. 2009)). As for Vista's procedural due process claim, the district court found "a genuine dispute of material fact concerning Vista's right to administrative appeal that is not adequately resolved by reference to the administrative record." *Id.* at \*15. Furthermore, it concluded that the parties should have addressed 45 C.F.R. § 156.1220 (2016), which allows an issuer to "file a request for reconsideration concerning the amount of a risk-adjustment payment or charge if the amount in dispute exceeds one percent of the applicable charge and the request is filed 'within 30 calendar days of the date of the notification under § 153.310(e).'" *Id.* at \*14 (quoting 45 C.F.R. § 156.1220(a)(1)(ii)).

No. 20-50963

Because a request under § 156.1220(a)(1)(ii) must first be reviewed by a "CMS hearing officer," and subsequently appealed to the "Administrator of CMS," *id.* (quoting 45 C.F.R. § 156.1220(b)(1)–(2), (b)(3), (c)(2)) (internal quotation marks omitted), and because there was no record of whether Vista's request for reconsideration was reviewed by a CMS hearing officer, the district court remanded the issue to HHS for determination, *id.* at *15.

Finally, Vista argued that "HHS's risk adjustment charges of over 50% of premium revenue for 2017 and 57% for 2018 amount to a confiscatory regulatory taking." The district court disagreed and concluded that "[t]his case does not present the classical taking in which the government directly appropriates private property for the government's use. This case involves risk-adjustment payments and charges that are budget neutral and transfer funds between insurers." *Id.* at *12.

Vista now appeals as to each of these issues.

## II.

As an initial matter, we must address Vista's eleventh-hour contention that this court lacks jurisdiction over this appeal. Vista first raised the issue of jurisdiction in its reply brief; it then spent most of its time at oral argument discussing jurisdiction rather than the substantive issues it raised in its opening brief. To little avail—neither Vista, nor the HHS Defendants for their part, could clearly explain why this court lacks jurisdiction, or has it. The question revolves around whether the district court's "Final Judgment" was truly an *appealable* judgment, i.e., disposing of all claims, because the district court denied summary judgment as to Vista's procedural due process claim but then remanded it to HHS. At the very least, the HHS Defendants correctly stated at oral argument that this case "is a complete jumble that has landed in [our] laps." Cutting through the knot, we conclude that we have jurisdiction to decide this appeal.

No. 20-50963

This court is vested with "jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. "[W]hether a ruling is 'final' within the meaning of § 1291 is frequently so close a question that decision of that issue either way can be supported with equally forceful arguments . . . ." *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 152 (1964). Accordingly, the Supreme Court "has held that the requirement of finality is to be given a 'practical rather than a technical construction.'" *Id.* (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)); *see also Brown Shoe Co. v. United States*, 370 U.S. 294, 306 (1962) ("A pragmatic approach to the question of finality has been considered essential to the achievement of the 'just, speedy, and inexpensive determination of every action' . . . ." (quoting FED. R. CIV. P. 1)).

"Generally, district court orders remanding to an administrative agency are not final orders." *Adkins v. Silverman*, 899 F.3d 395, 400 (5th Cir. 2018). However, "[i]t is less clear . . . whether that 'general rule' applies . . . where the [c]ourt has expressly entered final judgment, . . . has not retained jurisdiction, [and] has not issued any instructions to [the agency] regarding the remand." *Matson Navigation Co. v. U.S. Dep't of Transp.*, 480 F. Supp. 3d 282, 286 (D.D.C. 2020).

We face such a case here. The district court granted summary judgment for the HHS Defendants on all but one of Vista's claims. And though it denied summary judgment as to Vista's remaining procedural due process claim, the court also remanded that claim to HHS for further proceedings—a ruling that Vista does not contest on appeal.[2] The district

---

[2] Because Vista did not appeal the district court's remand of its procedural due process claim, that claim is not properly before us. The HHS Defendants invite this court to take judicial notice of two letters HHS sent to Vista, on November 12, 2019, and July 19, 2021, that purportedly address Vista's procedural due process claim after remand to the agency. The motion was not contested by Vista. Nevertheless, we decline the HHS

9

court explicitly stated in its Final Judgment that "nothing remains to resolve" and that "the case is hereby CLOSED." Accordingly, the court's ruling "end[ed] the litigation on the merits and [left] nothing for the court to do but execute the judgment." *Lewis v. E.I. Du Pont De Nemours & Co.*, 183 F.2d 29, 31 (5th Cir. 1950); *see also United Steelworkers of Am. Local 1913 v. Union R.R.*, 648 F.2d 905, 909 (3d Cir. 1981) ("[W]hen a district court's order can be characterized as a final disposition of the present litigation . . . , we have recognized that exercise of appellate jurisdiction under section 1291 may be appropriate."). The upshot is that the district court's order is an appealable final judgment. Thus satisfied of jurisdiction, we proceed to the merits of Vista's claims.

## III.

"This court reviews a grant of summary judgment *de novo*, applying the same standard to review the agency's decision that the district court used." *Baylor Cnty. Hosp. Dist. v. Price*, 850 F.3d 257, 261 (5th Cir. 2017). Vista raises five distinct issues on appeal: (A) whether the district court erred in determining that HHS's adoption of the 2017 and 2018 risk-adjustment transfer rules was not impermissibly retroactive; (B) whether the district court erred in applying the "harmless error" exception to HHS's APA notice-and-comment rule making violations; (C) whether the administrative record was deficient, rendering summary judgment on Vista's equal protection, regulatory taking, and arbitrary-and-capricious claims erroneous; (D) whether the district court erred in concluding that HHS is entitled to

---

Defendants' invitation, as the agency's further actions regarding Vista's claim should be litigated before the agency and appealed to the district court before any appeal to this court. And to be clear, we express no opinion on the viability or merits of Vista's claim post-remand to HHS. The matter is simply not before this court.

*Chevron* deference[3] in its interpretation and implementation of 42 U.S.C. § 18063; and (E) whether the district court erred in ruling *sua sponte* on Vista's regulatory taking claim without providing notice of its intent to do so. We address each issue in turn.

## A.

Vista argues that the 2017 and 2018 Final Rules were improperly retroactive in their reach. Vista asserts that the district court erroneously applied *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), instead of *Bowen v. Georgetown University Hospital*, 488 U.S. 204 (1988), in its retroactivity analysis and that under *Bowen*, the rules are improper. In the alternative, Vista also contends that the district court erred in concluding that the 2017 and 2018 Final Rules were not retroactive under *Landgraf.* Neither of Vista's arguments has merit.

### 1.

*Landgraf* established a two-step process for determining whether a statute is impermissibly retroactive. 511 U.S. at 280. The first step is "to determine whether Congress has expressly prescribed the statute's proper reach." *Id.* If so, then the inquiry ends there. *Id.* If not, then "the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* "If the statute would operate retroactively," then "it does not govern." *Id.*; *see also Handley v. Chapman*, 587 F.3d 273, 283 (5th Cir. 2009) ("A new regulation has an impermissible retroactive effect where its application 'would impair rights a party possessed

---

[3] *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'") (quoting *Fernandez–Vargas v. Gonzales*, 548 U.S. 30, 37 (2006)); *Vela v. City of Hous.*, 276 F.3d 659, 672–76 (5th Cir. 2001) (applying *Landgraf*).

Vista argues that the *Landgraf* retroactivity framework applies only to statutes, not regulations, and urges the court to look to *Bowen* for guidance instead. Vista contends that under *Bowen*, the only inquiry is whether HHS has the statutory authority to promulgate retroactive rules, and here, it is undisputed that HHS lacks such authority. But Vista's argument is belied by our analysis in *Handley*, where we applied *Landgraf*'s principles to evaluate whether an agency rule applied retroactively. *See* 587 F.3d at 283. In *Handley*, the court noted that "[n]ew procedural rules published by an agency may be made to apply . . . retroactively if injury or prejudice does not result[.]" *Id.* (quoting *Pac. Molasses Co. v. FTC*, 356 F.2d 386, 390 n.10 (5th Cir. 1966)). The court went on to conclude that a regulation "virtually identical to its predecessor" did not "create an impermissible retroactive effect." *Id.* (citations omitted). Similarly, and with no contrary authority offered by Vista, *Landgraf*'s "retroactive effect" inquiry applies here just as it would if we were weighing a statute instead of the 2017 and 2018 Final Rules.

**2.**

Vista contends that even under *Landgraf*, the 2017 and 2018 Final Rules are impermissibly retroactive. This is so, Vista argues, for two reasons: Vista relied on the absence of rules in 2017 and 2018 to its detriment. And, when HHS repromulgated the rules, they increased Vista's liability for past conduct, particularly because the rules were not promulgated until either after or toward the very end of their respective benefit years. We do not find either argument persuasive.

Vista argues that "[t]he new [rate adjustment transfer] rules increased Vista's liability for 2017 and 2018" and "[t]he district court . . . should have considered the fact that Vista relied on the absence of the rules" in weighing whether the 2017 and 2018 Final Rules were retroactive. However, Vista failed to argue before the district court that it ought to consider Vista's detrimental reliance in its retroactivity analysis. Therefore, the argument is forfeited, and we do not address it further. *See Hardman v. Colvin*, 820 F.3d 142, 152 (5th Cir. 2016) ("Arguments not raised in the district court cannot be asserted for the first time on appeal.").

Vista's parallel argument that the 2017 and 2018 Final Rules were retroactive because they "increase[d] [Vista's] liability for past conduct," *Landgraf*, 511 U.S. at 280, is similarly ineffective. *Handley* held that a regulation did not have a retroactive effect where it was "virtually identical to its predecessor" and the "[a]pplication of the new regulation . . . would not deprive [the plaintiff] of any rights she previously possessed." *Handley*, 587 F.3d at 283. Vista concedes that "neither the New 2017 nor the New 2018 final rule[] made major changes to the previously published HHS-operated risk-adjustment methodologies." Indeed, the only difference in the new 2017 Final Rule is "an additional explanation regarding the use of statewide average premium and the budget neutral nature of the program." Otherwise, the new 2017 rule "d[id] not make any changes to the previously published HHS-operated risk adjustment methodology for the 2017 benefit year." The 2018 Final Rule is similar; it adopted the risk adjustment methodology previously "established in the final rules published in the March 23, 2012 and the December 22, 2016 editions of the Federal Register" in order to "protect consumers from the effects of adverse selection and premium increases that would result from issuer uncertainty" arising from the New Mexico judgment.

Additionally, in the wake of the New Mexico court's ruling, HHS indicated neither that the rules would be cancelled permanently nor that it never intended to collect charges due for the 2017 and 2018 benefit years. In fact, HHS stated just the opposite. And despite the fact that HHS decided to reduce the adjusted statewide average premium for the 2018 and 2019 benefit years, it decided to "maintain[] the definition of statewide average premium previously established for the 2017 benefit year . . . [t]o *protect the settled expectations of issuers that ha[d] structured their pricing and offering decisions in reliance on the previously promulgated 2017 benefit year*." (Emphasis added.) Thus, HHS repromulgated the 2017 rule to ameliorate the very harms Vista alleges it suffered from the new rules, and Vista offers nothing to contradict this record.

The only evidence Vista presents in support of its argument that the 2017 and 2018 Final Rules retroactively changed its liability is an affidavit from Paul Tovar, the former chairman of Vista's board of directors. Though self-serving evidence can certainly be "sufficient to create a genuine issue of material fact," *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021), Tovar's affidavit does not explain how the minor differences between the previous rate adjustment transfer rules and the 2017 and 2018 Final Rules "deprive[d] [Vista] of any rights [it] previously possessed," *see Handley*, 587 F.3d at 283. The affidavit merely explains the financial circumstances that forced Vista to cease operations. It is therefore insufficient to create a genuine issue of material fact regarding the retroactive application of the 2017 and 2018 Final Rules.

As for Vista's contention regarding the "late" promulgation of the rules, the Supreme Court has long recognized that "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment . . . or upsets expectations based in prior law." *Landgraf*, 511 U.S. at 269 (citation omitted). Thus, the mere

fact that a statute, or, as here, an agency regulation, "draws upon antecedent facts for its operation" does not render it retroactive. *Id.* at 270 n.24 (quoting *Cox v. Hart*, 260 U.S. 427, 435 (1922)).  Instead, the relevant inquiry is whether the regulation is retroactive in effect. *See id.* at 280.  Accordingly, Vista's argument that the rules were impermissibly retroactive because they were promulgated either after or towards the very end of their respective benefit years is insufficient to establish improper retroactivity under our precedent.  Summary judgment was appropriate on this claim.

## B.

Vista next challenges HHS's failure to follow the APA's notice-and-comment procedures in promulgating the 2017 Final Rule.  Vista contends that HHS's lapse was not harmless, contrary to the district court's conclusion, because Vista detrimentally relied on the absence of the 2017 Final Rule to provide insurance at lower premiums during the year, which resulted in heavier rate adjustment transfer fees once the rule was repromulgated.  The fees levied under the new rule, in turn, ultimately caused Vista to be placed under supervision by TDI.

"We review an agency's compliance with [5 U.S.C.] § 553's notice-and-comment requirements under the arbitrary-and-capricious standard set forth in § 706(2)(A) of the APA . . . ." *Handley*, 587 F.3d at 281.  That standard "provides that a 'reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* (quoting 5 U.S.C. § 706(2)(A)).  "This is a narrow and highly deferential standard." *Id.*

Under the APA, a notice of proposed rulemaking and an opportunity for public comment are required before issuing a regulation, but these procedures can be waived for good cause. *See* 5 U.S.C. § 553(b)(3)(B).  Good

cause requires an agency to "find[] (and incorporate[] the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to public interest." *Id.* Even if an agency does not meet the APA's good cause exception, an agency's action still may be upheld if any error was harmless. *Johnson*, 632 F.3d at 930. Determining whether an error was harmless is "a case-specific inquiry involving an estimation of the likelihood that the result would have been different." *Id.* (internal quotation marks omitted). "[A] court must determine whether it is clear that the lack of notice and comment did not prejudice the petitioner." *Id.* at 931. The petitioner generally is not prejudiced when the regulation "addresse[s] counter-arguments and set[s] forth the basis and purpose of the rule." *Id.*

The district court held that the good faith exception did not apply to HHS's "last minute" decision to promulgate the 2017 Final Rule without complying with APA procedures because "HHS had options to create certainty in the market" but failed to do so "until two months before invoices were to be sent out." *Vista Health Plan*, 2020 WL 6380206, at *10. We need not determine whether the district court was correct in this assessment, however, because we agree with the court's ultimate conclusion that any error was harmless due to the lack of prejudice to Vista.

As Vista concedes, HHS's 2017 Final Rule adopted essentially the same methodology that insurers relied on prior to the New Mexico lawsuit. HHS took this approach expressly to "protect the settled expectations of issuers that ha[d] structured their pricing and offering decisions in reliance on the previously promulgated 2017 benefit year methodology." *See Johnson*, 632 F.3d at 931. The very language of the rule thus belies Vista's detrimental reliance argument. As the district court stated, it is apparent that "Vista's injury lies with the risk-adjustment program's existence, not HHS's deficient

administrative procedure regarding the New 2017 Final rule." *Vista Health Plan*, 2020 WL 6380206, at \*11.[4]

## C.

Vista contends that the district court erred in granting the HHS Defendants summary judgment on Vista's claims that HHS's actions violated its equal protection rights, constituted a regulatory taking, and were arbitrary and capricious. Vista reasons that the court erroneously "bas[ed] its decision on the HHS's existing rule making record" instead of an agency adjudication record; "[w]ithout that agency adjudication, there is no agency record upon which the court can resolve Vista's challenges." But Vista fails to present any relevant authority to support its position that an administrative adjudication was required for there to be an adequate administrative record to evaluate Vista's claims. This issue is therefore abandoned. *See Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 414 (5th Cir. 2021) ("When a party pursues an argument on appeal but does not analyze relevant legal authority, the party abandons that argument."); *see also Rutherford v. Harris Cnty.*, 197 F.3d 173, 193 (5th Cir. 1999) ("[W]e will not consider an issue that is inadequately briefed.").

Even if not, Vista would be estopped from asserting a position inconsistent with its prior position before the district court. "Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." *Allen v. C & H Distribs., L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015) (internal quotation and citation omitted). "Judicial estoppel has three elements: (1) The party against whom it is

---

[4] Vista's only other argument grounded on the APA's notice-and-comment procedures concerns the timing of the rule's enactment, but as described above, that argument is unpersuasive. *See Landgraf*, 511 U.S. at 270 n.24.

sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Id.* (internal quotation and citation omitted).

All three elements for judicial estoppel are met here. First, on July 23, 2019, Vista and the HHS Defendants filed a Joint Motion for Entry of Scheduling Order, in which the parties agreed that "this APA case is appropriately resolved by submission of an administrative record followed by cross-motions for summary judgment." The parties filed the administrative record on September 17, 2019. Vista now argues that the administrative record was not adequate and that some of its claims may therefore not be resolved upon consideration of the record—an argument "plainly inconsistent with [Vista's] prior position." *See Allen*, 813 F.3d at 572. Second, the district court accepted Vista's position taken in the Joint Motion for Entry of Scheduling Order by granting the joint motion and entering a scheduling order. In fact, the district court followed every step outlined in the parties' proposed order, eventually granting HHS's motion for summary judgment based on the administrative record filed with Vista's consent. Finally, there is no indication that Vista acted inadvertently. Vista is therefore judicially estopped from asserting on appeal that the administrative record it jointly agreed to submit (and submitted without objection) is now somehow inadequate to support the district court's evaluation of Vista's claims.

## D.

Vista asserts that the district court erroneously held that HHS was entitled to *Chevron* deference in its interpretation and implementation of 42 U.S.C. § 18063. To determine whether HHS's action exceeded its statutory authority under *Chevron*, this court conducts a two-step analysis. *See Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 433 (5th Cir. 2021). The first step is to

"ask whether Congress has directly spoken to the precise question at issue, in which case [this court] must give effect to the unambiguously expressed intent of Congress and reverse an agency's interpretation that fails to conform to the statutory text." *Id.* (quoting *Alenco Commc'ns, Inc. v. FCC*, 201 F.3d 608, 617 (5th Cir. 2000)) (internal quotation marks omitted). "If the statute is silent or ambiguous as to the specific issue, [this court] proceed[s] to step two and ask[s] whether the agency's answer is based on a permissible construction of the statute." *Id.* (quotation omitted). "If the agency's construction is arbitrary, capricious, or manifestly contrary to the statute," the court will reverse. *Id.* (quotation omitted). But if "the implementing agency's construction is reasonable," the agency's construction is entitled to deference. *Id.* (quoting *Acosta v. Hensel Phelps Constr. Co.*, 909 F.3d 723, 730 (5th Cir. 2018)) (internal quotation marks omitted).

Vista does not cite to or analyze any case law, statute, or regulation in support of its argument that HHS is not entitled to *Chevron* deference in its interpretation of § 18063. Thus, this argument is likely abandoned. *See Binh Hoa Le*, 990 F.3d at 414; Fed. R. App. P. 28(a)(8)(A). Regardless, we agree with the district court that

> HHS's interpretation of Section 18063 is entitled to *Chevron* deference because "Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in . . . notice-and-comment rulemaking, or by some other indication of comparable congressional intent." *Mead Corp.*, 533 U.S. at 226–27. Congress delegated development of the methodology to HHS, so the court adopts "a deferential standard of review" that gives considerable weight to HHS's judgment. In fact, the substance of the mandate for HHS to develop the risk-adjustment methodology

falls under a bullet point titled "In general."    42 U.S.C. § 18063(a).

*Vista Health Plan*, 2020 WL 6380206, at *16.  This issue lacks merit.

## E.

Finally, Vista asserts that it was error for the district court *sua sponte* to grant summary judgment for the HHS Defendants on Vista's regulatory taking claim because the court did not "address[] the factual basis for" the claim.  Once a court gives the parties notice and an opportunity "to respond, the court may:  (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."  FED. R. CIV. P. 56(f).  This court strictly enforces the notice requirement.  *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 210 (5th Cir. 2018).

Before the district court, Vista explicitly stated that this "case is appropriately resolved by submission of an administrative record followed by cross-motions for summary judgment," and, further, that "[i]f [the HHS Defendants] do not dispute" that "the [rate adjustment transfer rules] would take 50% of Vista's gross receipts for 2017 and 57% of Vista's gross receipts for 2018 and that the mere assertion of the [rate adjustment transfer rules] caused Vista's shut down . . . , then the takings claim may be ripe for summary judgment."  The HHS Defendants did not dispute those facts, and the parties filed cross-motions for summary judgment.  By Vista's own representation, then, the takings claim was ripe for summary judgment.  Further, the HHS Defendants filed their Reply in support of summary judgment on May 22, 2020, and the district court did not grant summary judgment until September 21, 2020.  Vista therefore knew that "the takings claim may be ripe for summary judgment" for approximately four months

No. 20-50963

after the motions were fully briefed and said nothing about the evidence that it now contends is pertinent.

Rather than considering the issue *sua sponte*, the district court considered Vista's representation that the takings claim was ripe for summary judgment and ruled against Vista. But even assuming that summary judgment was granted *sua sponte*, it was nevertheless proper because Vista had notice and opportunity to respond. Vista's last-ditch effort to circumvent the district court's ruling is unpersuasive; we find no reversible error.

**IV.**

To recap, we sort out the "complete jumble that has landed in [our] laps" in this case: Vista's belated argument that we lack jurisdiction to consider this appeal is belied both by the district court's order remanding Vista's procedural due process claim to HHS *and* by Vista's failure to raise any error in the court's remand ruling. On the merits, the 2017 and 2018 Final Rules adopted by HHS were not impermissibly retroactive under *Landgraf*. And HHS's failure to follow the APA's notice-and-comment procedures in its repromulgation of the 2017 Final Rule was at worst harmless error. The new rule actually maintained the settled expectations of insurers covered by the previous version of the rule. Vista's other issues on appeal regarding the administrative record before the district court, *Chevron* deference as to HHS's interpretation of the governing law, and the district court's "*sua sponte*" summary judgment on Vista's regulatory taking claim lack merit for the reasons discussed above.

AFFIRMED.