# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 9, 2022

Lyle W. Cayce
Clerk

No. 21-50542

Sasha Begum Norman, *individually and as next friend of minor child* S. N.; Shane Norman, *individually and as next friend of minor child* S. N.,

*Plaintiffs—Appellants*,

*versus*

Bodum USA, Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:19-CV-494

Before Higginson, Willett, and Ho, *Circuit Judges*.
James C. Ho, *Circuit Judge*:

Sasha and Shane Norman seek to hold Bodum USA, Inc., responsible for an alleged manufacturing defect in one of its French press coffee makers ("the Press") that they claim caused it to malfunction and injure their young child. The district court granted summary judgment for Bodum, concluding that no reasonable jury could find that the Press deviated from its intended design. We disagree. Accordingly, we reverse and remand for further proceedings.

No. 21-50542

## I.

Like most standard French presses, the Press consists of a cylindrical glass beaker or carafe equipped with a metal plunger. Ground coffee is placed in the carafe and hot water is added. After the coffee brews for several minutes, the user presses down on the plunger knob to push the coffee grounds toward the bottom of the carafe. To keep the coffee grounds from escaping upwards, the plunger has a circular press mechanism surrounded by a tightly wound spring coil. The spring coil is enveloped within a protective mesh that sits against the interior of the glass carafe.

In 2018, the Normans allowed their five-year-old child to help them prepare the morning coffee, as they had frequently done before. As the child pressed down on the plunger knob, the carafe shattered, causing hot coffee to erupt and burn 13% of his body. As a result, the child had to undergo multiple medical procedures and was left "horribly disfigured and permanently scarred." Bodum does not challenge that the Normans purchased the Press less than two years prior to the incident, brand-new and in its original packaging, and never modified or repaired it.

After the case was removed under diversity jurisdiction, the district court granted Bodum's motion for summary judgment. The court concluded that the Normans had failed to present sufficient evidence to permit a reasonable jury to find that a manufacturing defect exists. We disagree.

## II.

Our court reviews the district court's grant of summary judgment de novo, applying the same legal standards as the district court. *Ibarra v. UPS*, 695 F.3d 354, 355 (5th Cir. 2012). We must view "all the facts and evidence in the light most favorable to the non-movant." *Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 749 (5th Cir. 2018). Summary judgment is improper where "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Texas law governs the Normans' claim. Under Texas law, "[a] manufacturing defect exists when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). *See also Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006) (same). A plaintiff "must prove that the product was defective when it left the hands of the manufacturer and that the defect was a producing cause of the plaintiff's injuries." *Id.* (quotations omitted). *See also Ridgway*, 135 S.W.3d at 600.

A manufacturing defect may be established exclusively through circumstantial evidence. *See Johnson v. Michelin Tire Corp.*, 812 F.2d 200, 207 (5th Cir. 1987) (citing *Turner v. Gen. Mtrs. Corp.*, 584 S.W.2d 844, 848 (Tex. 1979)); *Ford Motor Co. v. Gonzalez*, 9 S.W.3d 195, 199 (Tex. App. 1999). But product failure or malfunction, standing alone, does not generally suffice to prove a manufacturing defect. *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 326 (5th Cir. 2014). Rather, plaintiffs must allege a specific deviation from the product's intended design that allegedly caused the injury. *Id. See also Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 42 (Tex. 2007).

This deviation element "serves the essential purpose of distinguishing a manufacturing defect from a design defect." *Id. See also Cooper Tire & Rubber Co.*, 204 S.W.3d at 808. If there is no deviation from the defendant's intended design, then the design itself is the alleged problem. In that situation, plaintiffs must bring a design defect claim, which requires proof of an additional "safer alternative design" element. *Ledesma*, 242 S.W.3d at 42 (citation omitted). In a manufacturing defect case, by contrast, the plaintiff

must present proof of a manufacturer's *intended* design, from which the actual product in question deviated as a result of a defect in the manufacturing process. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 434 (Tex. 1997); *Ledesma*, 242 S.W.3d at 42; *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 847 (Tex. 2000).

## III.

In their complaint, the Normans allege that the Press shattered during ordinary use, due to a specific manufacturing defect:  an end-piece of the Press's metal coil that, instead of being tucked inwards, protruded outwards beyond the protective mesh.  The Normans claim that this defect permitted the sharp, rough-cut end of the metal coil to come into direct contact with the glass carafe during ordinary use, likely causing a scratch that, when combined with thermal stress from the hot water, caused the carafe to shatter.  To show that the alleged defect was present when the Press left Bodum's control, the Normans point to French press coil assemblies advertised on Bodum's website that also contain an outwardly protruding coil.

To further support their manufacturing defect claim, the Normans offered the following evidence:  reports and documents corroborating their core theory that it is "Glass 101" that uncut metal should not touch glass; Bodum's instruction and owner's manuals that came with the French Press, along with Bodum's "ornamental design patent" for the French Press, each of which contain illustrations of French presses *without* protruding coils; and testimony from Bodum's CEO confirming that Bodum recommends consumers "use plastic or wooden tool[s] rather than metallic" so as to prevent scratching that could lead to fracture, and acknowledging that an "unfurled" "steel wire" "could be a manufacturing problem."

In addition, the Normans designated A. William Lingnell, an engineer with expertise on glass-safety, as their liability expert. Lingnell analyzed the remains of the Press, two exemplar French presses of identical make and model, and Bodum's various instruction and owner's manuals. And he drew several key conclusions.

First, he determined that the protruding coil present in the Press deviates from what must be Bodum's intended design. He explained that the purpose of the mesh spring that envelops the metal coil is to keep the coil "separated from the glass . . . averting contact between the edge of the coil and glass." This conclusion is consistent with the district court's finding that "the metal mesh is intended to engulf the coil so that the coil does not come into contact with the glass." In support of his conclusion, Lingnell points to Bodum's warnings not to use metal objects within the Press lest they scratch the interior. He also explains that "one of the most damaging and well-known exposures with respect to glass strength is glass-to-metal contact"— and "[t]his is particularly the case if [as here] the contacting metal has unpolished rough edges."

Second, Lingnell concluded that, based on the fracture observed in the subject carafe, "the most probable cause of failure of the glass carafe is thermal stress coupled with damage to the inside surface of the glass carafe caused by glass-to-metal contact between the wire mesh and/or the rough-cut edge of the perimeter spring."

And third, Lingnell explained that "the subject product's manufacturing defect, a protruding steel rough-cut of a coil, came into

contact and damaged the lip of the French Press' carafe, eventually leading to a thermal-stress fracture."[1]

## IV.

The district court found that none of the Normans' proffered evidence was sufficient to create a genuine issue of material fact. As for Lingnell's testimony, the court explained that Lingnell had examined "too small a sample" of exemplar French presses "from which to infer that the protruding coil was [a defect]," "especially . . . given the fact that, as Plaintiffs themselves point out, [some of] the coil assemblies advertised for sale on Bodum's website contain a protruding coil."

But there are several problems with the district court's reasoning. For one, Lingnell based his conclusion that the Press contained a manufacturing defect on more than just his analysis of the exemplars, including: (1) the standard principle that sharp metal edges should never come into contact with glass, (2) Bodum's warnings to this effect, and (3) the appearance of the mesh that otherwise engulfs the spring coil and separates it from the glass carafe. And even if Lingnell's conclusion were based on the exemplars alone, the district court's criticism merely bears on the weight and credibility of Lingnell's testimony—which is an issue for trial.

Relatedly, the district court focused heavily on the fact that several coil assemblies advertised on Bodum's website also contain a protruding coil.

---

[1] Bodum filed motions before the district court to exclude Lingnell's testimony and strike his report from the record, but the court never considered these motions on the merits. Instead, the district court dismissed them as moot after granting Bodum's motion for summary judgment, and Bodum does not challenge that dismissal on appeal. So the question of whether Lingnell's testimony is proper is not raised on appeal. On remand, Bodum is, of course, free to renew its motions to exclude this evidence for the district court to consider on the merits.

The district court concluded that this is "strong evidence that Bodum does not view [the protruding coil] as defective."

But an alternative interpretation of Bodum's website marketing materials is also available. The website could demonstrate, as the Normans suggest, that Bodum *tolerated*, rather than *intended*, the deviation.

This distinction is critical. In *American Tobacco Co.*, 951 S.W.2d at 434, the Texas Supreme Court considered whether the pesticide residue commonly found in cigarettes, which results from the tobacco fumigation process, constitutes a manufacturing defect. The defendant manufacturer "conced[ed] that its cigarettes contain pesticide residue," but argued that no manufacturing defect could be established, "because all cigarette manufacturers fumigate their tobacco with some type of pesticide, and residue inevitably remains after fumigation." *Id.* at 433.

The Texas Supreme Court rejected this argument. It held that a tolerated defect—even one that is tolerated *and* ubiquitous throughout an entire industry—is still a defect if it is unintended. *Id.* at 433–34. As the court explained, "[a]lthough pesticide residue may be found in many if not all cigarettes," it still "could be a manufacturing defect" because pesticides are "not an ingredient [defendant] intended to incorporate." *Id.* at 434.

After all, if the opposite were true, then manufacturers could avoid product liability by merely declining to remedy known defects. As the court put it, "[s]imply because certain precautions or improvements . . . are universally disregarded by an entire industry does not excuse their omission." *Id.*

\* \* \*

All told, the record contains at least the following evidence: (1) testimony from the Normans that they purchased their Press in brand-new

condition and never altered or repaired it; (2) a specific alleged defect consisting of a metal coil protruding beyond its mesh enclosure; (3) the district court's finding that "the metal mesh was intended to completely engulf the metal coil," which is corroborated by expert testimony; (4) an expert witness who examined the Press, tested it, compared it with two exemplars, and opined that the protruding metal coil deviated from the Press's intended design, and caused the glass to fracture and ultimately shatter; and (5) the shattering of the Press's glass carafe allegedly during ordinary use, albeit by a five-year-old child.

Viewing this evidence in the light most favorable to the Normans and drawing all reasonable inferences in their favor, we find that a genuine issue of material fact exists as to whether the Press contained a manufacturing defect that caused the Normans' injury.

We reverse and remand for further proceedings.