# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 9, 2024

Lyle W. Cayce
Clerk

———————————

No. 23-30281

———————————

Kelly Migdon,

*Plaintiff—Appellant*,

*versus*

171 Holdings, L.L.C., *doing business as* 171 Junction
Roadhouse; Steve Anderson; A D R Holdings, L.L.C.,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:18-CV-160

———————————————————————

Before King, Ho, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

Plaintiff Kelly Migdon brings Equal Pay Act and Title VII claims against Defendants 171 Holdings (doing business as 171 Junction Roadhouse), Steve Anderson, and ADR Holdings, alleging pay discrimination based on sex. Because we agree with the district court's decision to deny Migdon's

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

request for additional discovery time and to dismiss the Title VII claims as to 171 Holdings and all claims as to Anderson and ADR Holdings, we affirm.

## I.

On August 24, 2015, Plaintiff Kelly Migdon was hired as an independent contractor by Christopher DeMers on behalf of 171 Junction Roadhouse, a new restaurant that was preparing for opening. Migdon and DeMers agreed that she would be transferred to the restaurant's payroll and that her salary would increase once the restaurant officially opened for business.

171 Junction Roadhouse officially opened for business around October 19, 2015. The next week, DeMers offered Migdon the position of Assistant General Manager. This offer did not include a pay raise, so Migdon declined. DeMers then hired Chance Hebert for the position, but he was terminated within a few weeks for misconduct reasons. At that point, Migdon revisited the Assistant General Manager offer and accepted it with the condition that she would receive a pay raise after completing the required training. Migdon never received the required training, and thus never received any pay increase.

Migdon eventually learned that the restaurant had paid Hebert an annual salary of $40,000—$10,000 more than she was being paid for working the same position. She sent DeMers a text message asking to speak about the required managerial training and the promised compensation. She also sent an email to Steve Anderson, relaying her concerns about the discriminatory practices. Anderson allegedly told Migdon that he "would handle it," but he did not respond to any of Migdon's subsequent communications. A couple days later, DeMers changed the restaurant's email account password without notifying Migdon and terminated her.

No. 23-30281

Migdon filed a complaint with the Equal Employment Opportunity Commission, alleging discrimination based on sex and unlawful retaliation. The EEOC determined that there was reasonable cause.

On February 7, 2018, Migdon brought federal claims under Title VII and the Equal Pay Act against 171 Holdings (doing business as 171 Junction Roadhouse), Christopher DeMers, ADR Holdings, Steve Anderson, and Picayune Social House NOLA. One of the defendants, DeMers, hired counsel Christopher Ieyoub to represent all five defendants in the case. During the October 4, 2018 scheduling conference, the court set the trial date for October 28, 2019. While Migdon alleges that she initiated preliminary discussions concerning settlement and discovery, no formal discovery ensued. On July 30, 2019, the parties filed a joint motion for continuance, and the court granted the motion.

In early October 2019, a scheduling conference was held to select a new trial date. During that conference, counsel reported that DeMers had filed for Chapter 7 bankruptcy. As a result, Defendants' counsel, Christopher Ieyoub, withdrew from the case in early January 2020. While ADR Holdings and Anderson retained counsel Robert Landry to represent them, the rest of the defendants—171 Holdings, DeMers, and Picayune Social House NOLA—were unrepresented from this point forward.

On June 29, 2020, Migdon propounded discovery requests—interrogatories, requests for production of documents, and requests for admissions. They were addressed to 171 Holdings and Anderson and sent to Landry, even though 171 Holdings was not represented by Landry. Landry initially assured Migdon that he would provide responses on behalf of Anderson in early August, but Hurricanes Laura and Delta, which occurred in August and October, respectively, further delayed the responses. Ultimately, Landry never ended up providing formal responses. And at the December 15, 2020 status

conference, Landry stated his intent to withdraw, noting that it was difficult to get in contact with his client. As a result, the magistrate judge terminated the March 22, 2021 trial date and all related deadlines, and set a scheduling conference for March 11, 2021.

Shortly thereafter, on December 22, 2020, Migdon filed a motion for summary judgment, but only as to the claims against 171 Holdings. The motion was set to be heard on February 24, 2021. On January 11, 2021, Anderson and ADR Holdings sought to enroll new counsel, Julie Quinn, and requested additional time to respond, even though the summary judgment motion was not directed against their claims. Despite Migdon's objection, the court granted the extension. On February 10, 2021, Anderson and ADR Holdings submitted a cross-motion for summary judgment, as well as a combined memorandum in support of its motion and in opposition to Migdon's motion for summary judgment.

The district court heard oral argument for both motions on April 15, 2021. The district court granted Anderson and ADR Holdings' motion for summary judgment, finding that Migdon did not have a claim against Anderson or ADR Holdings directly. It was skeptical that Migdon could reach Anderson or ADR Holdings by 'piercing the corporate veil' of 171 Holdings. The court also dismissed Migdon's Title VII claims against 171 Holdings *sua sponte*, because it found that 171 Holdings did not qualify as a Title VII "employer." The district court otherwise granted Migdon's motion for summary judgment against 171 Holdings as unopposed.

Migdon timely appealed, but this court dismissed the case for lack of jurisdiction. *Migdon v. 171 Holdings, L.L.C.*, No. 21-30411, 2022 WL 404583 (5th Cir. Feb. 9, 2022). Migdon subsequently obtained a final judgment, voluntarily dismissed her claims against Picayune Social House NOLA—the last remaining defendant—and brought this appeal.

## II.

We review a district court's grant of summary judgment de novo. *Norman v. Bodum USA, Inc.*, 44 F.4th 270, 272 (5th Cir. 2022). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). But summary judgment should not be granted, if, viewing the evidence in the light most favorable to the nonmovant, "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When a district court grants summary judgment *sua sponte*, it must first provide the parties with "notice and a reasonable time to respond." FED. R. CIV. P. 56(f). If a district court fails to provide adequate notice prior to granting summary judgment *sua sponte*, we review for harmless error. *Lexon v. Ins. Co. v. FDIC*, 7 F.4th 315, 321 (5th Cir. 2021); *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 210 (5th Cir. 2018).

We review a district court's denial of a request for additional discovery for abuse of discretion. *Am. Fam. Life Assurance Co. v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013).

## III.

Before reaching the main issues, we must first determine whether appellate jurisdiction exists. Federal appellate courts have jurisdiction over all "final decisions of the district courts," barring limited exceptions. 28 U.S.C. § 1291. A "final decision" is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 350 (5th Cir. 2004) (internal citations omitted). Therefore, "as a general rule, all claims and issues in a case must be adjudicated before appeal." *Id.*

Our court, however, has recognized at least two exceptions to this rule. *See id.*; *see also* FED. R. CIV. P. 54(b). For example, a decision is considered final "if the only claims not disposed of by the district court were abandoned." *McLaughlin*, 376 F.3d. at 351. A district court's decision that "does not specifically refer to all pending claims" is also be considered final if "it is clear that the district court *intended*, by the decision, to dispose of all claims." *Id.*

We find that the latter applies here. Our review of the record shows that the district court did not clearly note that its final judgment applied to Defendants' counterclaims in the matter. But we find that the district court's actions clearly indicated its intent to dispose of all remaining claims. For example, the district court closed the case, noting that "all claims pending in this litigation were terminated with the voluntary dismissal of Picayune Social House NOLA, [] so [] this matter can be marked closed." *See, e.g.*, *Vaughn v. Mobil Oil Expl. & Producing Se., Inc.*, 891 F.2d 1195, 1197–98 (5th Cir. 1990) (concluding that a district court intended its decision to be final even though there was a pending crossclaim because it was "couched in language calculated to conclude all claims" and the district court closed the case).

For this reason, we have jurisdiction over this appeal.

## IV.

First, we address Migdon's arguments against the district court's dismissal of the Title VII claim against 171 Holdings. Migdon contends that because 171 Holdings did not file its own motion for summary judgment and the only motion filed regarding 171 Holdings was Migdon's unopposed motion, the district court *sua sponte* dismissed the Title VII claims without providing the proper notice and reasonable time to respond, as required by Rule 56(f). *See Lexon Ins. Co.*, 7 F.4th at 321.

The notice requirement must be "strictly enforced," absent a showing of harmless error. *Id.* Under the harmless error standard, an appellate court can affirm the district court's grant of summary judgment *sua sponte* "if the nonmoving party admits that he has no additional evidence anyway or if the appellate court evaluates all of the nonmoving party's additional evidence and finds no genuine issue of material fact." *D'Onofrio*, 888 F.3d at 210 (internal quotation marks omitted). We find that this is the case here.

The district court found that 171 Holdings lacked the necessary number of employees to be an employer for purposes of Title VII. Under Title VII, an employer must be "engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). For purposes of Title VII numerosity, 'current calendar year' means the year in which the alleged discrimination occurred, rather than the year of the district court judgment. *See Vance v. Union Planters Corp.*, 209 F.3d 438, 446 (5th Cir. 2000).

Here, 171 Junction Roadhouse did not open for business until October of 2015, leaving less than twenty weeks left in the year. Thus, the district court concluded that the twenty-week threshold could not have been met for that year. And there is no evidence in the record that suggests that employees were on the payroll in the preceding year, so the numerosity requirement could not have been met for the preceding calendar year either.

Migdon maintains, however, that the district court could not dismiss her Title VII claims against 171 Holdings without first allowing her an opportunity to conduct additional discovery on these issues. Specifically, Migdon contends that she needed to conduct further discovery as to the relationship between DeMers, Anderson, 171 Holdings, and ADR Holdings

to determine whether multiple entities could qualify here as an employer for Title VII purposes. Migdon argues that the district court disregarded her Rule 56(d) request,[1] which is intended to protect nonmovants like herself from summary judgment motions that they cannot adequately oppose. *See* FED. R. CIV. P. 56(d); *Biles*, 714 F.3d at 894.

We find that the district court was well within its discretion to deny additional time for discovery. While Rule 56(d) motions for additional discovery are "broadly favored and should be liberally granted," the requesting parties must demonstrate "a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.* (citations omitted); *see also Washington v. Allstate Ins.*, 901 F.2d 1281, 1285 (5th Cir. 1990) ("[A] plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment."). The requesting party "may not simply rely on vague assertions that discovery will produce needed, but unspecified, facts." *Washington*, 901 F.2d at 1285.

And if "the nonmoving party has not diligently pursued discovery of th[e] evidence, the court need not accommodate the nonmoving party's belated request." *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991). Here, even Migdon's counsel recognizes that they did not adequately exhaust the existing remedies to obtain discovery prior to the hearing. Over the course of the three-year litigation, Migdon did not file a

---

[1] Migdon's Rule 56(d) request was a part of her memorandum in opposition to Anderson and ADR Holding's motion for summary judgment, filed on February 10, 2021.

motion to compel discovery, nor did she subpoena documents or take a deposition. Thus, we hold that the district court did not err in granting summary judgment *sua sponte*.

Next, we consider whether the district court erred in granting Anderson and ADR Holdings' motion for summary judgment.

Migdon contends that the district court erred in giving weight to the exhibits attached to Anderson and ADR Holdings' motion for summary judgment because they were untimely, given her outstanding discovery request from June 2020. And by refusing her request for additional discovery, the district court contravened Rule 56(d). Migdon additionally argues that Anderson and ADR Holdings have not provided evidence to show that (1) they were not successor entities of 171 Holdings, or (2) they could not be reached by piercing 171 Holdings' corporate veil.

As with her previous assertions, Migdon's statements concerning the potential relationship between DeMers, Anderson, 171 Holdings, and ADR Holdings are vague assertions, at best. Migdon has not provided any substantive basis to suggest that discovery will produce facts that support her successor liability or joint employer liability theories. This court has also long held that continuance of a motion for summary judgment for purposes of additional discovery is usually granted *unless* the nonmoving party has not diligently pursued relevant discovery. *Wichita Falls Off. Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992). Not only did Migdon fail to file a motion to compel discovery, but her discovery requests were also largely unrelated to uncovering information regarding Anderson and ADR Holdings' relationships to 171 Holdings and the other defendants. Instead, the requests largely focused on Migdon's time at the restaurant and the discrimination incident, which Anderson asserts he had little knowledge or documentation of. Migdon's only written discovery requests were not

No. 23-30281

addressed to ADR Holdings; they were addressed to 171 Holdings and Anderson only, though they were sent to Anderson and ADR Holdings' counsel. At this point in the litigation, 171 Holdings was not represented by any counsel, and Migdon did not seek written discovery from DeMers or take his deposition.

For these reasons, we affirm.